ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
       – and –
DANIELLE S. MYERS (259916)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BODRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOPRO, INC., et al.,<br><br>Defendants. | Case No. 3:16-cv-00232-JST<br><br>CLASS ACTION<br><br>CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF<br><br>DATE:      April 21, 2016<br>TIME:      2:00 p.m.<br>CTRM:     9, 19th Floor |

1131817_1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ...........................................................3

III.    ARGUMENT .................................................................................................................3

    A.   The Court Should Use the Original Class Period to Assess the Movants' Financial Interests ...............................................................................................3

    B.   The Groups Are Not Entitled to the "Most Adequate Plaintiff" Presumption .................................................................................................................5

    C.   Not Only Are Each of the Groups Improper Amalgamations of Strangers, Several Members Are Individually Atypical or Inadequate ...................................10

        1.   The Nupur Family's Certifications Are Plagued with Significant Pricing Errors, It Cannot Establish Loss Causation for Most of Its Transactions, and It Is Subject to a Unique Reliance Defense .................10

        2.   Several GoPro Group Members Appear to Be Atypical Short Sellers............................................................................................................12

        3.   Bending Spoons (and the Majesty Palms Group) Should Be Disqualified Because It Is Competing Against Itself for Appointment as Lead Plaintiff ..................................................................13

        4.   Another Majesty Palms Group Member, Jon Goldstein, Has Trading Patterns that Render Him Unsuitable to Represent the Class ...................................................................................................................14

    D.   Zhao Gao's Motion Should Be Denied Because There Is No Need for a "Co-Lead Plaintiff" for Options Traders ...............................................................16

    E.   The Other Movants Are Not Eligible for the PSLRA's Presumption ..................17

IV.     CONCLUSION.............................................................................................................17

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Apple v. LJ Int'l, Inc.*,
5
   2008 U.S. Dist. LEXIS 12618 (C.D. Cal. Feb. 8, 2008)........................................................7, 8

6

*Applestein v. Medivation, Inc.*,
   2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17, 2010) ....................................................15
7

*Averdick v. Hutchinson Tech., Inc.*,
8
   2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006) ........................................................16

9

*Bang v. Acura Pharms., Inc.*,
   2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ........................................................15
10

11

*Bhojwani v. Pistiolis*,
   2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. July 30, 2007) ....................................................10

12

*Brown v. China Integrated Energy, Inc.*,
13
   2011 U.S. Dist. LEXIS 151131 (C.D. Cal. Aug. 29, 2011)..................................................11

14

*Buettgen v. Harless*,
   263 F.R.D. 378 (N.D. Tex. 2009) ........................................................................................8, 9
15

16

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................................5

17

*Eichenholtz v. Verifone Holdings, Inc.*,
18
   2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)............................................. *passim*

19

*Fishbury, Ltd. v. Connetics Corp.*,
   2006 U.S. Dist. LEXIS 90696 (S.D.N.Y. Dec. 14, 2006) ....................................................16
20

21

*Folsom v. IndyMac Bancorp, Inc.*,
   No. CV 08-3812 (C.D. Cal. Sept. 12, 2008)........................................................................12

22

*Foster v. Maxwell Techs., Inc.*,
23
   2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ....................................................2

24

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004)....................................................................................................16
25

26

*In re Bank One S'holders Class Actions*,
   96 F. Supp. 2d 780 (N.D. Ill. 2000) ....................................................................................15

27

*In re BP, PLC Sec. Litig.*,
28
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................4

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- ii

1

2                                                                                                    **Page**

3

*In re Cavanaugh,*
4      306 F.3d 726 (9th Cir. 2002) .................................................................3, 5, 7, 17

5    *In re Cendant Corp. Litig.,*
       182 F.R.D. 476 (D.N.J. 1998)..................................................................................17
6

7    *In re Cendant Corp. Litig.,*
       264 F.3d 201 (3d Cir. 2001).............................................................................7, 9, 14
8

     *In re Centerline Holding Co. Sec. Litig.,*
9      2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008) ........................................4, 5

10   *In re Critical Path, Inc.,*
       156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...................................................................12
11

12   *In re Diamond Foods, Inc.,*
       295 F.R.D. 240 (N.D. Cal. 2013).............................................................................12
13

     *In re Dynegy, Inc. Sec. Litig.,*
14     2002 U.S. Dist. LEXIS 27858 (S.D. Tex. Oct. 28, 2002)........................................16

15   *In re Enron Corp., Sec. Litig.,*
       206 F.R.D. 427 (S.D. Tex. 2002).......................................................................10, 12
16

17   *In re E.spire Commc'ns, Inc. Sec. Litig.,*
       231 F.R.D. 207 (D. Md. 2000)..................................................................................6
18

     *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,*
19     209 F.R.D. 447 (C.D. Cal. 2002) ..............................................................................6

20   *In re Gentiva Sec. Litig.,*
       281 F.R.D. 108 (E.D.N.Y. 2012) ..............................................................................8
21

22   *In re Level 3 Commc'ns, Inc. Sec. Litig.,*
       2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009)..............................6, 7, 8, 9
23

     *In re McKesson HBOC, Inc. Sec. Litig.,*
24     97 F. Supp. 2d 993 (N.D. Cal. 1999) ........................................................................11

25   *In re MicroStrategy Inc. Sec. Litig.,*
       110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................8, 16, 17
26

27   *In re Netflix, Inc., Sec. Litig.,*
       2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) ........................................6

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                                    - iii

1

2                                                                                             **Page**

3

4    *In re Network Assocs. Sec. Litig,*
        76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................6, 7, 9

5    *In re Oxford Health Plans, Inc. Sec. Litig.,*
6       182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................16, 17

7    *In re Petrobras Sec. Litig.,*
        104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015)...........................................................6

8
     *In re Safeguard Scientifics,*
9       216 F.R.D. 577 (E.D. Pa. 2003) ...........................................................................15

10   *In re Silicon Storage Tech., Inc.,*
        2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) .......................................11
11

12   *In re Tarragon Corp. Sec. Litig.,*
        2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) .........................................8

13
     *In re Valence Tech. Sec. Litig.,*
14      1996 U.S. Dist. LEXIS 21774 (N.D. Cal. Mar. 14, 1996)......................................12

15   *In re Vaxgen Sec. Litig.,*
16      2004 U.S. Dist. LEXIS 29812 (N.D. Cal. Apr. 14, 2004) .......................................7

17   *In re Vonage Initial Pub. Offering Sec. Litig.,*
        2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 7, 2007)...........................................14

18
     *In re Waste Mgmt., Inc.,*
19      128 F. Supp. 2d 401 (S.D. Tex. 2000) .............................................................16, 17

20   *In re XM Satellite Radio Holdings Sec. Litig.,*
        237 F.R.D. 13 (D.D.C. 2006)..........................................................................16, 17
21

22   *Irving Firemen's Relief & Ret. Fund v. Tesco PLC,*
        2015 U.S. Dist. LEXIS 38635 (S.D.N.Y. Mar. 19, 2015) .....................................10

23
     *Janus Capital Grp., Inc. v. First Derivative Traders,*
24      564 U.S. 135 (2011)...............................................................................................4

25   *Khunt v. Alibaba Group Holding Ltd.,*
        102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015)......................................................9, 16
26

27   *Marcus v. J.C. Penney Co., Inc.,*
        No. 6:13-CV-0736 (E.D. Tex. Feb. 28, 2014) ...............................................13, 15

28

      CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
      MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
      JST                                                                                   - iv -

1

2                                                                              **Page**

3

4   *Nager v. Websecure, Inc.*,
        1997 U.S. Dist. LEXIS 19601 (D. Mass. Nov. 26, 1997) ......................................10

5   *Niederklein v. PCS Edventures!.com, Inc.*,
6       2011 U.S. Dist. LEXIS 18247 (D. Idaho Feb. 24, 2011)..........................................7

7   *Perlmutter v. Intuitive Surgical, Inc.*,
        2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ..........................................2

8   *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
9       275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................8

10  *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
11      256 F.R.D. 620 (E.D. Wis. 2009) ...................................................................4

12  *Richman v. Goldman Sachs Grp., Inc.*,
        274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................13

13  *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*,
14      136 F.R.D. 658 (D. Or. 1991) ...................................................................12

15  *Ross v. Abercrombie & Fitch Co.*,
16      2007 U.S. Dist. LEXIS 24903 (S.D. Ohio Mar. 22, 2007)........................................9

17  *Schriver v. Impac Mortg. Holdings, Inc.*,
        2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ........................................7, 8, 9

18  *Schueneman v. Arena Pharms., Inc.*,
19      2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ........................................16

20  *Sczesny Trust v. KPMG LLP*,
21      223 F.R.D. 319 (S.D.N.Y. 2004) ...................................................................16, 17

22  *Shaffer v. Digital Generation, Inc.*,
        No. 3:13-CV-1684-N (N.D. Tex. Sept. 19, 2013)  ...................................................15

23  *Singer v. Nicor, Inc.*,
24      2002 U.S. Dist. LEXIS 19884 (N.D. Ill. Oct. 16, 2002)..........................................14

25  *Thomas v. Magnachip Semiconductor Corp.*,
        2016 U.S. Dist. LEXIS 28077 (N.D. Cal. Mar. 4, 2016)..........................................4

26  *Tsirekidze v. Syntax-Brillian Corp.*,
27      2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008)................................................ *passim*

28

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                              - v -

1

2                                                                                    **Page**

3
*Weisz v. Calpine Corp.*,
4       2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002)........................................13
5     **STATUTES, RULES AND REGULATIONS**

6
15 U.S.C.,
7       §78u-4(a)(2)(A)(iv)...........................................................................................10
        §78u-4(a)(3)(A)....................................................................................................7
8       §78u-4(a)(3)(B)(iii).........................................................................................10
        §78u-4(a)(3)(B)(iii)(I).........................................................................................1
9       §78u-4(a)(3)(B)(iii)(I)(bb)................................................................................10

10    Federal Rules of Civil Procedure
        Rule 23 ...........................................................................................1, 2, 3, 17
11      Rule 23(a).............................................................................................................3
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                  - vi

## I.  INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the "court shall adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Camia Investment LLC respectfully submits that it is the only proposed lead plaintiff before the Court that satisfies the PSLRA's requirements.

First, assuming the Court adopts the original class period used by half of the lead plaintiff movants and most of the plaintiffs, Camia Investment has the single largest financial interest:

| Movant | Losses Suffered in Original Class Period |
|---|---|
| **Camia Investment** | **($904,799)** |
| GoPro Group | |
|     Rajendra Panchal | ($504,350) |
|     Nupur Family | ($362,364) |
|     Karen Mokrushin | ($244,603) |
|     Joseph Errico | ($239,796) |
|     Balwinder Brar | ($46,570) |
| | Group Total: ($1,347,684) |
| Fedon Group | |
|     Leonard and Janice Fedon | ($160,233) |
|     Charles and Julia Boettcher | ($141,191) |
|     Christopher Murphy | ($105,962) |
|     Keith Drennan | ($81,302) |
|     Lenny Muma | ($57,330) |
| | Group Total:  ($546,021) |
| Majesty Palms Group | |
|     <span style="color:red">Bending Spoons ApS</span> | ($336,165) |
|     Jon Goldstein | ($94,993) |
|     Isaac Benporat | ($17,546) |
|     Majesty Palms | <span style="color:red">$15,449</span> |
| | Group Total:  ($433,261) |
| Michal Kadera | ($379,202) |
| <span style="color:red">Bending Spoons ApS</span> | ($336,165) |
| Azim Maknojia | ($244,298) |
| Zhao Gao | ($20,494) |

*See* Declaration of Danielle S. Myers in Support of Camia Investment LLC's Opposition to

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- 1 -

Competing Motions for Consolidation and Appointment as Lead Plaintiff ("Myers Opp. Decl."), Ex. A.[1]

Alternatively, if the Court uses the revised *Majesty Palms* period that half the movants explicitly or implicitly agree is implausible, Camia Investment does not possess the largest financial interest but it is the only movant that meets the Rule 23 requirements.  Indeed, regardless of the period adopted, the other movants suffer from a host of defects precluding their appointment:

- The GoPro Group, Majesty Palms Group and Fedon Group are "impermissible grouping[s] of plaintiffs" that failed to timely evidence the group's adequacy;[2]

- A member of the Majesty Palms Group, Bending Spoons ApS, filed a competing motion against itself and should be disqualified from serving as lead plaintiff;

- Several movants are subject to loss causation defenses because they were in-and-out of GoPro stock on multiple occasions before an alleged disclosure;

- Some of the movants are subject to a unique reliance defense because they continued to purchase substantial amounts of GoPro stock immediately after the wrongdoing was revealed;

- A couple of movants appear to be atypical short sellers which, unlike the putative class, transact in stock based on the premise that the price will fall, not rise; and

- One movant liquidated his position in GoPro stock over 400 times on a daily or weekly basis, an investment pattern courts in this District have previously found "would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36.

By contrast, Camia Investment does not have any conflicts with the putative class and does not suffer from any unique defenses.  As such, regardless of the class period the Court ultimately adopts, the other motions should be denied.  Camia Investment's motion should be granted.

---

[1]    To facilitate an apples-to-apples comparison, the movants' losses are uniformly estimated pursuant to LIFO (last in, first out), which courts have called "the favored method."  *Foster v. Maxwell Techs., Inc.*, 2013 U.S. Dist. LEXIS 154538, at *12 n.1 (S.D. Cal. Oct. 24, 2013); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *33 (N.D. Cal. Feb. 15, 2011) (finding the arguments in favor of LIFO "more persuasive").  Importantly, Camia Investment's losses are the same regardless of whether LIFO or FIFO (first in, first out) is used.

[2]    *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *20 (N.D. Cal. Aug. 22, 2008).

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST                                                                                                  - 2 -

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should deny the competing motions and grant Camia Investment's motion for appointment as lead plaintiff.

## III.    ARGUMENT

"The 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).[3]   To identify the presumptively most adequate plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730.  "It must then focus its attention on **that** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.* (emphasis in original).

"If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.*  If, however, "the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

Camia Investment is the only movant that meets the PSLRA's requirements here.

### A.     The Court Should Use the Original Class Period to Assess the Movants' Financial Interests

The "district court must consider the losses allegedly suffered by the various plaintiffs" before selecting "the 'presumptively most adequate plaintiff.'"  *Cavanaugh*, 306 F.3d at 729-30.  This task is somewhat more complicated here because the Court must first decide which period to use: the original class period alleged in each of the *Bodri*, *Deem* and *Van Meerbeke* Complaints that half of the movants used, or the revised *Majesty Palms* period.  And, while district courts generally adopt the longest period to assess financial interest, courts also recognize that "[t]here is a risk . . . to

---

[3]     All emphasis is added and all citations are omitted unless otherwise noted.

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- 3 -

1   blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would

2   be encouraged to manipulate the class period so they had the largest financial interest." *In re BP,*

3   *PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010).[4]  To negate this risk, courts either

4   employ a "plausibility" or "obviously frivolous" test to the time periods alleged.  *See In re*

5   *Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, at *12 (S.D.N.Y. May 5, 2008)

6   (using plausibility test to determine proper class period at lead plaintiff stage); *Plumbers &*

7   *Pipefitters Local 562 Pension Fund*, 256 F.R.D. at 625 (adopting "obviously frivolous" test at lead

8   plaintiff stage); *BP*, 758 F. Supp. 2d at 434 (same).  Accordingly, "[f]or purposes of selecting a lead

9   plaintiff, the Court [should] use the longest noticed class period unless the factual allegations

10   supporting that period are 'obviously frivolous'" or implausible.  *Id.*[5]

11        As Camia Investment noted in its Motion, "the *Majesty Palms* complaint 'pleads no facts that

12   make [its] allegation[s] plausible' because there are no statements by or attributable to a defendant

13   between November 2014 and January 2015."  *See* Dkt. No. 32 at 5-7 (quoting *Centerline*, 2008 U.S.

14   Dist. LEXIS 36406, at *12).  And, without a statement by or attributable to a defendant, there simply

15   is no cognizable securities fraud claim.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 564

16   U.S. 135, 141-43 (2011) (plaintiff must allege statement by or attributable to a defendant to plead

17   securities fraud claim); *Thomas v. Magnachip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 28077,

18   at *33 (N.D. Cal. Mar. 4, 2016) (same).  Consequently, the *Majesty Palms* period is "obviously

19

---

20   [4]    *See also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D.

21   620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination").  Quite notably, Majesty Palms' counsel issued a press release with the

22   original class period before Majesty Palms' Certification was signed.  *See* Myers Opp. Decl., Ex. B. Majesty Palms' counsel subsequently altered the original class period to include Majesty Palms'

23   transactions that fell outside the original period.  *See Majesty Palms* Complaint, ¶1 and Certification.

24   [5]    While the *BP* court determined that neither period asserted in that case was "obviously

25   frivolous," the court nonetheless appointed a separate lead plaintiff for both the long and short periods because the movant with the largest loss in the longer period had gains during the short

26   period, wished to assert a different theory of the case than the other plaintiffs did, and "[b]ecause of these divergent theories, [that plaintiff] might not have an interest in vigorously pursuing the claims

27   central to the . . . shorter class period."  *See* 758 F. Supp. 2d at 438.  As in *BP*, Majesty Palms has a $15,440 gain in the original class period and is obviously precluded from representing that class.

28   *See* Dkt. No. 32 at 5 n.2.  Its theory of the case also differs from the other plaintiffs.

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST              - 4 -

1   frivolous" and should not be used for the financial interest determination. *See Centerline*, 2008 U.S.

2   Dist. LEXIS 36406, at *12 (declining to use longer but implausible period at lead plaintiff stage).[6]

3          Notably, the original class period is not only asserted in a majority of the Complaints filed in

4   the Related Actions, half of the lead plaintiff movants also advocate for its application to the

5   motions.  *See Bodri* Complaint, ¶1; *Deem* Complaint, ¶1; *Van Meerbeke* Complaint, ¶2; Dkt. Nos.

6   21, 31, 32, 36. And, while the GoPro Group asserted the *Majesty Palms* period in its motion, its

7   counsel issued three press releases notifying putative class members of the original class period,

8   including one issued after the *Majesty Palms* complaint was filed.  *See* Myers Opp. Decl., Ex. C. The

9   Majesty Palms Group's counsel also issued a press release identifying the original class period.  *Id.*,

10  Ex. B.[7]  As such, there are no credible concerns about the appropriateness of using the original class

11  period to assess the movants' financial interest here.

12          **B.     The Groups Are Not Entitled to the "Most Adequate Plaintiff" Presumption**

13          Several motions were filed by previously unaffiliated individuals seeking "group" treatment

14  to aggregate their losses for purposes of satisfying the largest financial interest requirement.[8]  While

15  the Ninth Circuit has expressly reserved the question of "whether a group can satisfy the 'largest

16  financial interest' requirement by aggregating losses" (*Cavanaugh*, 306 F.3d at 731 n.8), "'courts

17  have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together

18  for the sole purpose of aggregating their claims in an effort to become the presumptive lead

---

[6]       For the same reasons, the *Majesty Palms* Complaint should not be consolidated with the three other Related Actions.  *See also* Dkt. No. 21 (requesting consolidation of *Bodri*, *Deem* and *Van Meerbeke* only); Dkt. No. 36 (same).

[7]       The Majesty Palms Group may urge the Court to use the longer period simply because it encompasses more potential class members.  While that concern might be valid in certain cases, it is entirely illusory here.  Indeed, Majesty Palms failed to provide a legitimate basis to credibly contend that there are potential class members to protect between November 2014 and January 2015 because the *Majesty Palms* Complaint does not allege a plausible securities fraud during that period.  *See generally Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (reiterating that the purpose of the securities laws is not to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause").

[8]       *See* Dkt. No. 26 (group of three family members and four individuals); Dkt. No. 15 (group of two entities and two individuals); Dkt. No. 21 (group of two married couples and three individuals).

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                              - 5 -

plaintiff.'"  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *22 (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451-52 (C.D. Cal. 2002)).  The reason is obvious: to "'allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation,'" which is not what Congress intended.  *In re Network Assocs. Sec. Litig*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("'Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.'");  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *25 (recognizing that "ignoring the basis of the group formation and appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation").[9]  Thus, the Court should not permit aggregation where, as here, none of the groups' members individually possess the largest financial interest.  *See supra* §I; *Network Assocs.*, 76 F. Supp. 2d at 1024 (recognizing that "Congress plainly rejected" the proposition that an investor "with the single largest loss could be trumped by a collage of individual investors with greater aggregate losses but no ability to manage the case"); *In re Netflix, Inc., Sec. Litig.*, 2012 U.S. Dist. LEXIS 59465, at *16-*19 (N.D. Cal. Apr. 27, 2012) (declining to aggregate group's individual losses, particularly since another movant "has the largest loss of any individual movant"); *In re E.spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 214 (D. Md. 2000) (stating that the "Court is not persuaded that a larger group, which claims to have suffered the largest loss because of a mechanical aggregation of those losses . . . should be preferred over a single investor, who has alleged the largest individual loss").

Even assuming one of the groups did individually possess the largest financial interest (which none do), none of the amalgamations before the Court have demonstrated it "'is capable of performing the lead plaintiff function'" by "'provid[ing] appropriate information about its members, structure, and intended functioning'" including "'descriptions of its members, including any pre-

---

[9]     *See also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (stating that "many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff") (citing cases); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *12 (D. Colo. May 4, 2009) (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008) ("when unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation").

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST                                                                                                                    - 6 -

existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'"[10] *Network Assocs.*, 76 F. Supp. 2d at 1026-27.[11]  And if, as here, the "proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied." *Id.*[12]

Here, there are obvious "indication[s] that the [groups were] artificially created by [their] lawyers." *Cendant*, 264 F.3d at 268.  First, the Certifications executed by the GoPro and Fedon Group members state that the individuals are "willing to serve as a lead plaintiff either individually *or as part of a group*," confirming that each delegated the decision to form the group to counsel. *See* Dkt. Nos. 27-2 at ¶3 or ¶4; 21-1 at ¶2 ("willing to serve as a representative party on behalf of the class . . . either individually *or as part of a group*").[13]  "The fact that the decision to combine . . .

---

[10]    The threshold adequacy showing should be apparent from the group's initial motion.  *See generally* 15 U.S.C. §78u-4(a)(3)(A) (60-day deadline); *Cavanaugh*, 306 F.3d at 730 (inquiry based on information provided in pleadings and declarations); *In re Vaxgen Sec. Litig.*, 2004 U.S. Dist. LEXIS 29812, at *14 (N.D. Cal. Apr. 14, 2004) ("PSLRA is unequivocal and allows for no exceptions" and "'precludes consideration of . . . any other pleading . . . filed *after* the sixty (60) day window has closed'") (emphasis in original).  As such, the Court should not permit a group to belatedly proffer this information when "there is no reason the . . . groups could not have submitted such evidence in connection with their initial motions." *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *28 n.10 (C.D. Cal. May 1, 2006).

[11]    *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) (directing district courts to assess whether "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff"); *Apple v. LJ Int'l, Inc.*, 2008 U.S. Dist. LEXIS 12618, at *11 (C.D. Cal. Feb. 8, 2008) (courts "should examine any proposed groups closely to determine whether they will be able to perform the lead plaintiff function and guide the litigation"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *26 (movants should demonstrate "how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy"); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *25 (groups "are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation").

[12]    *See also Niederklein v. PCS Edventures!.com, Inc.*, 2011 U.S. Dist. LEXIS 18247, at *13 (D. Idaho Feb. 24, 2011) (declining to appoint group because "the record is devoid of evidence demonstrating the group is cohesive and not purely lawyer-driven"); *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *13 (rejecting group that "has not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation").

[13]    The Fedon Group's motion is further undermined by counsel's "suggest[ion] that [the Court should] pluck one of its top . . . constituents to serve as lead plaintiff 'if th[e] Court does not appoint a group as the lead plaintiff.'"  *Compare Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 *with* Dkt. No. 21 at 1 (moving "[i]n the alternative" for two group members to be appointed).  The Court should decline this invitation as the "willingness to abandon the group only suggests how loosely it

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST                                                                                                                                                    - 7 -

1   was made by the groups' counsel, with no apparent involvement by the group members, does not

2   bode well for the members' ability to supervise their attorneys." *Schriver*, 2006 U.S. Dist. LEXIS

3   40607, at \*26.  Indeed, such "assertions hardly persuade the Court that they, as opposed to counsel,

4   would be directing this litigation." *Apple*, 2008 U.S. Dist. LEXIS 12618, at \*13.

5           Second, as to each of the groupings, "evidence that the members of these groups have ***ever***

6   communicated" is "wholly lacking."  *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS

7   91418, at \*3, \*5-\*6 (S.D.N.Y. Dec. 6, 2007); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d

8   427, 437 (E.D. Va. 2000) (group "failed to present evidence" that "members of the group had ever

9   communicated with one another").[14]  Indeed, one of the GoPro Group's Certifications was executed

10  at 11:42 a.m. the same day its motion was filed, strongly indicating that the "group" had no pre-

---

12  was put together." *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at \*15-\*16 (noting that "Group moved for lead plaintiff as a group and will be evaluated as such"); *see also Buettgen v. Harless*, 263

13  F.R.D. 378, 382 (N.D. Tex. 2009) (finding that group's motion was "undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court

14  deems the . . . Group inappropriate").  Moreover, "[n]o evidence has been presented that the members had any role in the decision to form . . . or in the decision to preserve the option of keeping

15  them separate." *Schriver*, 2006 U.S. Dist. LEXIS 40607, at \*27-\*30 (noting a group's "flexibility" but "declin[ing] to follow its suggestion"); *Level 3*, 2009 U.S. Dist. LEXIS 44706, at \*17 (declining

16  "request to appoint only one individual out of an otherwise inadequate group in order to salvage lead plaintiff status").

17  [14]        Unlike the GoPro Group and Fedon Group, the Majesty Palms Group at least attempted to

18  meet its burden to demonstrate the group's adequacy by submitting a declaration. *See* Dkt. No. 15-8. Yet, even ignoring the conflict of interest inherent in the fact that group member Bending Spoons

19  filed a competing motion against itself, the "conclusory declaration has little or no substance." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at \*28.  Notably missing from the declaration is any

20  indication that the members have actually communicated, only that they "plan to communicate" at some point in the future. Dkt. No. 15-8 at ¶6.  Moreover, the Court is "left with little additional

21  understanding of, for example, how the group was formed," "how its members would function collectively," or "the mechanism by which the group members and counsel would communicate with

22  one another about the litigation." *Level 3*, 2009 U.S. Dist. LEXIS 44706, at \*15. Inexplicably, the group decided that Majesty Palms "will have final determination to resolve any dispute," which

23  seemingly undermines the need or justification for a group at all. Dkt. No. 15-8 at ¶9.  Ultimately, the Majesty Palms Group provided "no rationale for this grouping other than to manufacture the

24  greatest financial interest in order to be appointed lead plaintiff." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at \*28; *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at \*18 (rejecting group because

25  "[t]here is simply no evidence that this 'group' has a meaningful connection"); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012) (noting that "the reasons offered for the

26  combination are not particularly compelling, especially in light of the fact that [a plaintiff] previously brought one of the consolidated actions in its own name, adequately and without any

27  assistance from [a group member]"); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) ("conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation").

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                                      - 8 -

1    filing contact but instead was formed by counsel at the last minute.  *See* Dkt. No. 27-2 at 11.

2    "[I]nstead of explaining how they are prepared to work together to manage this litigation on behalf

3    of the proposed class," the GoPro Group and Fedon Group "submitted essentially boilerplate

4    certifications."  *Buettgen*, 263 F.R.D. at 381; *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15

5    (denying motion by group of "completely unrelated individuals from different parts of the country"

6    who have "participated only to the extent of signing his name onto a boilerplate 'certification'").

7             The situation here is similar to that in *Network Associates*, where Judge Alsup noted that

8             [t]he only thing the investors in any group have in common, however, is the lawyer.
              They have no link to each other.   They are not organized with any group
9             decisionmaking apparatus. They attended no organizing meetings.  They have no
              cohesive identity.  They have no name other than one arbitrarily selected by the
10            lawyers.

11   76 F. Supp. 2d at 1022.  Accordingly, it is clear that each of these groups was "created by the efforts

12   of lawyers hoping to ensure their eventual appointment as lead counsel."  *Cendant*, 264 F.3d at 267.

13            Given the lack of evidence supporting any group's adequacy, "there [is] no basis from which

14   to ascertain the ability of the . . . ***Group*** as a whole, ***or its members***, to fairly and adequately

15   represent the interests of the class."  *Ross v. Abercrombie & Fitch Co.*, 2007 U.S. Dist. LEXIS

16   24903, at *12-*13 (S.D. Ohio Mar. 22, 2007).  Consequently, none of the groups are "entitled to the

17   presumption that it is the most adequate plaintiff because it has not made the required preliminary

18   showing that it would adequately represent the class."  *Schriver*, 2006 U.S. Dist. LEXIS 40607, at

19   *28.[15]  The groups' motions should be denied.

20

21

22

23   _____

24   [15]        Any suggestion by the groups that the Court may disassociate an infirm member from its
     ranks to save the rest of the "group" should be rejected.  *See Ross*, 2007 U.S. Dist. LEXIS 24903, at
25   *13 ("There is no requirement in the [PSLRA] that the Court realign a proposed group to cure a
     deficiency in adequacy of representation."); *Buettgen*, 263 F.R.D. at 382 (group's "motion is
26   undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as
     lead plaintiff if the Court deems the Buettgen Group inappropriate"); *Level 3*, 2009 U.S. Dist. LEXIS
27   44706, at *17 (rejecting movants' "request to appoint only one individual out of an otherwise
     inadequate group in order to salvage lead plaintiff status"); *Tsirekidze*, 2008 U.S. Dist. LEXIS
28   118562, at *15 (group "moved for lead plaintiff as a group and will be evaluated as such").

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                           - 9 -

**C.     Not Only Are Each of the Groups Improper Amalgamations of Strangers, Several Members Are Individually Atypical or Inadequate**

While the "purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies," this appears to be the rationale behind each of the groupings before the Court. *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002).

**1.     The Nupur Family's Certifications Are Plagued with Significant Pricing Errors, It Cannot Establish Loss Causation for Most of Its Transactions, and It Is Subject to a Unique Reliance Defense**

Beyond its membership in an inadequate group, the Nupur Family is subject to a host of challenges precluding its appointment as lead plaintiff including material price discrepancies, in-and-out transactions negating loss causation, and post-class period purchases that subject it to unique defenses. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii) (lead plaintiff must be typical and adequate and cannot be subject to unique defenses).

The PSLRA and this Court's local rules requires movants to set forth their transactions in the relevant stock on the certification form. *See* 15 U.S.C. §78u-4(a)(2)(A)(iv); Civ. L.R. 3-7(b)(4). This requirement makes practical sense because it allows a movant to evidence its financial interest in the relief sought and estimate its losses. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Here, however, the Nupur Family's true financial interest is unknown – and unknowable – because virtually all of the prices on its Certifications fall well outside the daily price range for GoPro stock. *Compare* Myers Opp. Decl., Exs. D-E *with* Dkt. No. 27-2.[16] These material inaccuracies preclude the Court's ability "to verify [the Nupur Family's] claimed losses which 'undermines [its] adequacy' as lead plaintiff." *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 U.S. Dist. LEXIS 38635, at *10-*11 (S.D.N.Y. Mar. 19, 2015) (disregarding losses that conflicted with "publicly available historical trading data"); *Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 96246, at *12 (S.D.N.Y. July 30, 2007) (noting fact that movant's data did "not quite add up indicates a certain carelessness about detail that undermines the adequacy of Mr. Cole (and his associated group) as a lead plaintiff"); *Nager v.*

---

[16]     Several other movants' Certifications contain similar pricing discrepancies, albeit to a much lesser extent than the Nupur Family.  *See* Myers Opp. Decl., Ex. E.

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- 10 -

1131817_1

1    *Websecure, Inc*., 1997 U.S. Dist. LEXIS 19601, at *3 n.1 (D. Mass. Nov. 26, 1997) (explaining that

2    while the "inaccuracy" of the certifications "may be explainable," these oversights "cast[] sufficient

3    doubt on [the movants'] adequacy as . . . representative plaintiff[s] that [they] should be excluded

4    from the group appointed to serve as lead plaintiffs").

5         Beyond these fundamental errors, the Nupur Family's Certifications reveal that each

6    regularly traded completely in-and-out of GoPro stock before an alleged disclosure.[17]  This type of

7    trading is problematic for two interrelated reasons.  First, "[b]ecause such a trader sells its shares

8    prior to a disclosure that lowers the stock price, it is unlikely to have suffered loss as a result [of] the

9    false and misleading statements or omissions, and would not be an appropriate lead plaintiff."

10   *Brown v. China Integrated Energy, Inc*., 2011 U.S. Dist. LEXIS 151131, at *37-*38 (C.D. Cal. Aug.

11   29, 2011).  And second, because it cannot establish loss causation for these transactions, the Nupur

12   Family's loss is dramatically overstated.  *See Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *12

13   ("find[ing] no reason to include losses in its calculations that would later be considered

14   uncompensable" because "it is difficult, if not impossible, to demonstrate loss causation for shares

15   bought ***and*** sold before the disclosure of the misstatements or omissions") (emphasis in original); *In

16   re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999) (holding it was

17   "inappropriate to count losses (or profits) by 'in-and-out' traders . . . when determining the plaintiff

18   with the greatest financial interest in the litigation").  For both reasons, the motion should be denied.

19   *See In re Silicon Storage Tech., Inc*., 2005 U.S. Dist. LEXIS 45246, at *26 (N.D. Cal. May 3, 2005)

20   (rejecting proposed lead plaintiff "because both members of this group are in/out traders, and as

21   such, are potentially subject to unique defenses").[18]

22

23

24   [17]    *See* Dkt. No. 27-2 at 1 (all in-and-out transactions except 5,000 purchase on 9/24/15), at 2-3 (all in-and-out transactions except 12/24/15 and 12/28/15 purchases), at 4-5 (all in-and-out transactions except 9/29/15 and 12/17/15 purchases), at 6-7 (all in-and-out transactions except 12/24/15 and 12/31/15 purchases).  The Fedon Group's members suffer from this same defect.  *See* Dkt. No. 21-1.

25

26

27   [18]    GoPro Group members Mokrushin and Brar also inflated their loss estimates on in-and-out transactions.  *See* Dkt. No. 27-2 at 9-10, 12.  Unlike the Nupur Family, the Fedon Group's loss calculation is not overstated.  *See* Dkt. No. 21-1 at 19-25.

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                                      - 11 -

1    In addition to the pricing discrepancies and inability to establish loss causation for a majority

2    of their transactions, the Nupur Family also continued to purchase significant amounts of GoPro

3    stock immediately ***after*** the alleged wrongdoing was revealed.  In fact, one member of the Nupur

4    Family purchased almost as many shares after the class period (21,000) as it did during the class

5    period (23,500).  *See* Dkt. No. 27-2 at 2-3, 5-7.  As one court in this District determined at the class

6    certification stage, the "'fact that [plaintiff] continued to trade in the stock [of defendants] after he

7    learned of the alleged misrepresentations of defendants severs the link between the alleged

8    misrepresentations of defendants and the stock purchases made by [plaintiff] and acts to rebut the

9    presumption that [plaintiff] relied on the alleged misrepresentations in making his purchases.'" *In re*

10   *Valence Tech. Sec. Litig.*, 1996 U.S. Dist. LEXIS 21774, at *12 (N.D. Cal. Mar. 14, 1996) (quoting

11   *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991)); *see also*

12   *Folsom v. IndyMac Bancorp, Inc.*, No. CV 08-3812, slip op. at 8-9 (C.D. Cal. Sept. 12, 2008)

13   (denying lead plaintiff motion by movant that continued to purchase a significant amount of stock

14   after alleged revelation of fraud) (citing numerous cases) (Myers Opp. Decl., Ex. F); *Enron*, 206

15   F.R.D. at 455 (rejecting lead plaintiff movant who continued to purchase stock "after the initial

16   public disclosure regarding Enron's overstatement of its assets").  Because the Nupur Family would

17   be saddled with this defense, the motion should be denied.

18        **2.**     **Several GoPro Group Members Appear to Be Atypical Short Sellers**

19        Beyond the other disabling defects discussed above, several GoPro Group members'

20   Certifications evidence sales of GoPro shares before a purchase.  *See* Dkt. No. 27-2 at 2, 6 and 16.

21   This type of transaction can indicate short selling.  "Short sellers, as the term is used here, are

22   investors who sell stock that they borrow from brokers but do not own, incurring the obligation to

23   'cover' their sales in the future.  Such traders purchase shares with the expectation that the share

24   price will decline." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 258 (N.D. Cal. 2013) (excluding

25   short sellers from the class).  As courts in this District and around the country have recognized, "[i]t

26   is a poor choice to appoint a class representative who engaged in a trading practice premised on the

27   belief the stock would fall." *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-11 (N.D. Cal.

28

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                              - 12

1   2001) (finding that history of short selling stock disqualified investor from appointment as lead

2   plaintiff because "[s]hort sales raise the question of whether the seller was actually relying on the

3   market price, and the class is not served by its representative coming under such scrutiny"); *Weisz v.*

4   *Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *28 (N.D. Cal. Aug. 15, 2002) ("Hickam is

5   disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock

6   'short' during the Class Period.").[19]

7        Unlike these members of the GoPro Group, the rest of the class (and Camia Investment) did

8   ***not*** intend for GoPro's stock to fall. Thus, these group members' strategies are atypical of the class

9   they seek to represent.

10         **3.      Bending Spoons (and the Majesty Palms Group) Should Be
            Disqualified Because It Is Competing Against Itself for Appointment**

11         **as Lead Plaintiff**

12        Beyond the fact that it is a lawyer-driven group of strangers, the Majesty Palms Group

13   suffers from a fundamental defect that precludes a finding of adequacy: "group" member Bending

14   Spoons simultaneously filed dueling lead plaintiff motions and is competing with itself to serve as

15   lead plaintiff. *Compare* Dkt. No. 15 *with* Dkt. No. 31.[20] Equally as troubling, Bending Spoons has

16   taken contradictory positions between the motions. *Compare* Dkt. No. 15 (using revised *Majesty*

17   *Palms* period) *with* Dkt. No. 31 (using original class period).[21]

18   ────────────────────────────

19   [19]    *See also Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-0736, slip op. at 13 (E.D. Tex. Feb.
     28, 2014) (denying motion by investor that "engaged in another atypical trading practice, short
20   selling shares and buying to cover those short sales" because "[s]uch a trading practice would be
     atypical of the class as profit accrues when the price of the security decreases") (Myers Opp. Decl.,
21   Ex. G).

22   [20]    The timing of Bending Spoons' involvement with each law firm does little to clarify the
     situation. *See* Dkt. No. 15-4 at 4 (Gainey McKenna Certification dated February 22, 2016); Dkt. No.
23   31-2 (Levi & Korsinsky Certification dated March 7, 2016); and Dkt. No. 15-8 (Gainey McKenna
     declaration dated March 11, 2016).

24   [21]    Bending Spoons appears to be located in Denmark. *See* Myers Opp. Decl., Ex. H. "Even in
     this 'only-for-PSLRA' world . . . the [Majesty Palms Group] are strange bedfellows." *Richman v.*
25   *Goldman Sachs Grp., Inc*., 274 F.R.D. 473, 478 (S.D.N.Y. 2011) (noting that "Group consists of a
     German, Danish, and U.S. entity"). Bending Spoons' foreign location may also explain why it came
26   to retain two law firms and file two lead plaintiff motions. *See Eichenholtz*, 2008 U.S. Dist. LEXIS
     64633, at *30 ("The fitness of the Israeli Group to be lead plaintiff is further compounded by
27   language barriers, esoteric United States securities laws and problems inherent in communicating
     across continents.").

28
     CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
     MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
     JST                                                                                          - 13 -

Bending Spoons' competing motions highlight the concerns numerous courts have expressed about counsel cobbling together plaintiffs to achieve the largest financial interest.  Indeed, this confounding sequence of events indicates that Bending Spoons either knowingly allowed two sets of lawyers to file competing motions or that Bending Spoons is completely unaware of who its counsel is, who its co-movants are, and it essentially lent its name to a lawsuit.  Either scenario precludes Bending Spoons' ability to serve as lead plaintiff.  *See generally Cendant*, 264 F.3d at 267 (noting that one of PSLRA's goals is to have "an ***engaged*** lead plaintiff actively supervise the conduct of the litigation").  It also raises additional concerns about the *bona fides* of the "group" that included Bending Spoons among its ranks.  *See Singer v. Nicor, Inc.*, 2002 U.S. Dist. LEXIS 19884, at *7 (N.D. Ill. Oct. 16, 2002) (viewing movant's proclaimed "mis-communication" as a "more serious problem" because the movant's "unknowing retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts . . . that make it unsuitable to make decisions on behalf of the class"); *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562 at *17 (court determined that "blatant gaffe" by individual who moved against himself and later claimed he "sent his lead-plaintiff certification to the wrong firm 'in error'" did "not bode well" for the movant's ability to "lead this litigation").

Bending Spoons' dueling motions cast doubt on its ability to "engage in the litigation in a meaningful way at all."  *Id.* at *14-*15; *In re Vonage Initial Pub. Offering Sec. Litig.*, 2007 U.S. Dist. LEXIS 66258, at *30 (D.N.J. Sept. 7, 2007) ("In light of the course of events, the Court is unconvinced that Mr. Guzhagin was fully aware of the situation prior to selecting counsel or that he is sophisticated enough to lead the litigation . . . .").  As such, both of its motions should be denied.

### 4.   Another Majesty Palms Group Member, Jon Goldstein, Has Trading Patterns that Render Him Unsuitable to Represent the Class

Like the Nupur Family, Majesty Palms Group member Jon Goldstein's Certification evidences several trading patterns defendants will undoubtedly exploit to the detriment of the class if the group is appointed as lead plaintiff.  Specifically, Mr. Goldstein completely liquidated his GoPro holdings 443 times during the Class Period, often within the same day or week of a purchase.  *See* Dkt. No. 15-4 at 6-16.  This transaction history subjects Mr. Goldstein to two unique defenses. First,

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-JST

- 14 -

1    like the Nupur Family, Mr. Goldstein overstated his loss and cannot allege loss causation for all but

2    7 of the 443 transactions. *See supra* §III.C.1 at 11. Second, Mr. Goldstein's investment thesis

3    appears similar to that of a day trader, someone who "'typically focus[es] on technical price

4    movements rather than price,' and therefore are subject to a defense the they would have purchased

5    the stock at issue 'regardless of the misstatement/omission.'" *Applestein v. Medivation, Inc.*, 2010

6    U.S. Dist. LEXIS 98255, at *9-*10 (N.D. Cal. Sept. 17, 2010) (rejecting day trader as lead plaintiff);

7    *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36 (same); *Tsirekidze*, 2008 U.S. Dist. LEXIS

8    118562, at *18 (same).[22]   A cursory review of Mr. Goldstein's Certification evidences trades

9    designed to take advantage of incremental price movements of as little as twenty-six cents. *See, e.g.,*

10   Dkt. No. 15-4 at 6 (12/29/14 purchase at $66.99 and sales a day later at $67.30 and $67.25). Thus,

11   as compared to other putative class members (like Camia Investment), a trader like Mr. Goldstein

12   "would not be typical of the class because the class's damages stem from reliance upon the

13   company's financial statements, ***not*** upon daily market volatility." *Eichenholtz*, 2008 U.S. Dist.

14   LEXIS 64633, at *36.

15       And while the "record before the court may be insufficient to establish that [Goldstein] was a

16   day-trader *qua* day-trader," it "is sufficient, however, to raise serious concerns about his typicality

17   and about his susceptibility to the defense that he was trading in response to information other than

18   the alleged misstatements and omissions made by [GoPro]." *Applestein*, 2010 U.S. Dist. LEXIS

19   98255, at *10; *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *18 ("While a day trader is not ipso

20   facto disqualified from the lead plaintiff role, McCullough's unique trading pattern combined with

21

22

---

23   [22]     *See also Marcus*, slip op. at 13 (denying motion by investor that "bought and sold his entire

24   JCP portfolio on the same or next trading day on at least ten different instances" because such
     "trading practices relies more on speculation rather than investing") (Myers Opp. Decl., Ex. G);
     *Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, slip op. at 6-7 (N.D. Tex. Sept. 19, 2013)

25   (same) (Myers Opp. Decl., Ex. I); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa.
     2003) (same); *Bang v. Acura Pharms., Inc.*, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11,

26   2011) ("high-frequency trading can raise challenges to typicality and raise a unique defense
     regarding lack of reliance on material misstatements and omissions"); *In re Bank One S'holders

27   Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (suggesting that movant who "engaged in
     extensive daytrading" was not qualified to serve as lead plaintiff).

28

1   questions about adequacy establish that his group should not represent the class.").  As such, the

2   Court should deny the motion.

3       **D.      Zhao Gao's Motion Should Be Denied Because There Is No Need for a
            "Co-Lead Plaintiff" for Options Traders**

4

5           Unlike the other movants, Zhao Gao does not seek appointment as lead plaintiff.  Rather,

    Zhao Gao only seeks appointment as "co-lead plaintiff" to represent the interests of options traders.

6   *See* Dkt. No. 40 at 1.  This request is apparently predicated on the false assumption that common

7   stock investors cannot adequately represent the interests of options traders.  The Court should not be

8   persuaded by this argument.

9           Indeed, district courts routinely deny requests by options traders seeking to bifurcate the lead

10  plaintiff role because "[b]eing a lead plaintiff is not the same thing as being a class representative,

11  and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct

12  interests or claims."  *Schueneman v. Arena Pharms., Inc*., 2011 U.S. Dist. LEXIS 87373, at *17-*18

13  (S.D. Cal. Aug. 8, 2011) (denying movant's request for appointment as "co-lead-plaintiff to protect

14  the interests of class members who suffered call options losses") (citing *Hevesi v. Citigroup Inc*., 366

15  F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead

16  plaintiff with standing to sue on every available cause of action.")).[23]  Accordingly, Zhao Gao's

17  "speculation about potential class standing problems should not be resolved by the appointment of

18  multiple lead plaintiffs, . . . but by the appointment, if necessary and desirable, of additional class

19  representatives as the litigation proceeds."  *Fishbury*, 2006 U.S. Dist. LEXIS 90696, at *13;

20  *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *17-*18 (denying request as premature at lead

21  plaintiff stage); *XM Satellite*, 237 F.R.D. at 20 (same); *Averdick*, 2006 U.S. Dist. LEXIS 47445, at

22

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [23]     *See also Khunt v. Alibaba Group Holding Ltd*., 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015)
    (denying request for creation of options subclass at lead plaintiff stage); *Sczesny Trust v. KPMG*

24  *LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (same); *MicroStrategy*, 110 F. Supp. 2d at 440 (same);
    *Fishbury, Ltd. v. Connetics Corp*., 2006 U.S. Dist. LEXIS 90696, at *13 (S.D.N.Y. Dec. 14, 2006)

25  (denying option trader's request for appointment as co-lead plaintiff); *In re XM Satellite Radio*
    *Holdings Sec. Litig*., 237 F.R.D. 13, 20 (D.D.C. 2006) (same); *Averdick v. Hutchinson Tech., Inc*.,

26  2006 U.S. Dist. LEXIS 47445, at *17-*20 (D. Minn. Feb. 9, 2006) (same); *In re Dyneg, Inc. Sec.*
    *Litig*., 2002 U.S. Dist. LEXIS 27858, at *17-*18 (S.D. Tex. Oct. 28, 2002) (same); *In re Waste*

27  *Mgmt., Inc*., 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (same); *In re Oxford Health Plans, Inc. Sec.*
    *Litig*., 182 F.R.D. 42, 51 (S.D.N.Y. 1998) (same).

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                      - 16 -

1   *17-*20 (same); *Sczesny Trust*, 223 F.R.D. at 325 (same); *MicroStrategy*, 110 F. Supp. 2d at 440

2   (same); *Waste Mgmt.*, 128 F. Supp. 2d at 432 (same); *Oxford Health Plans*, 182 F.R.D. at 51 (same).

3        Furthermore, assembling a lead plaintiff group that has standing to represent every type of

4   purchaser or has standing to sue on all possible causes of action "would injure the purpose of the

5   PSLRA by fragmenting the plaintiff class and decreasing client control." *In re Cendant Corp. Litig.*,

6   182 F.R.D. 476, 480 (D.N.J. 1998); *XM Satellite*, 237 F.R.D. at 20 (same); *MicroStrategy*, 110 F.

7   Supp. 2d at 440 ("the PSLRA requires a district court to appoint a single lead plaintiff or lead

8   plaintiff group for each class action; there is no provision for multiple lead plaintiffs other than those

9   joined as a group"). Ultimately, the fact that class members might have different types of securities

10  does not require a separate class or co-lead plaintiffs.

11       Zhao Gao's motion for appointment as co-lead plaintiff should be denied.

12       **E.    The Other Movants Are Not Eligible for the PSLRA's Presumption**

13       All of the other movants claim smaller losses than Camia Investment's loss. *See supra* §I.

14  Consequently, the Court cannot consider their motions unless the presumption in favor of appointing

15  Camia Investment as lead plaintiff is successfully rebutted. *Cavanaugh*, 306 F.3d at 732 (court

16  considers other motions "if and only if" the presumptive lead plaintiff is "found inadequate or

17  atypical"). Because Camia Investment is "willing to serve and satisfies the requirements of Rule

18  23," the other motions should be denied. *Id.* at 730.

19  **IV.    CONCLUSION**

20       None of the competing movants can trigger the PSLRA's most adequate plaintiff

21  presumption because they either lack the largest financial interest in the proper time period or do not

22  satisfy the Rule 23 requirements. By contrast, Camia Investment does that meet the requirements for

23

24

25

26

27

28

1131817_1

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                    - 17 -

1    appointment as lead plaintiff.   As such, the competing motions should be denied.   Camia

2    Investment's motion should be granted.

3    DATED:  March 28, 2016                     Respectfully submitted,

4

5                                                          s/ Danielle S. Myers
                                                         DANIELLE S. MYERS

6
                                           ROBBINS GELLER RUDMAN
7                                              & DOWD LLP
                                           655 West Broadway, Suite 1900
8                                          San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
9                                          619/231-7423 (fax)

10                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
11                                          SHAWN A. WILLIAMS
                                           Post Montgomery Center
12                                          One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
13                                          Telephone:  415/288-4545
                                           415/288-4534 (fax)

14                                          [Proposed] Lead Counsel for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAMIA INVESTMENT LLC'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR CONSOLIDATION AND APPOINTMENT AS LEAD PLAINTIFF - 3:16-cv-00232-
JST                                                                                        - 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 28, 2016.

<u>s/ Danielle S. Myers</u>
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:dmyers@rgrdlaw.com

1131817_1

# Mailing Information for a Case 3:16-cv-00232-JST Bodri v. GoPro, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrice L. Bishop**
  service@ssbla.com

- **Mario Man-Lung Choi**
  mchoi@kaplanfox.com

- **Catherine Duden Kevane**
  ckevane@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,dsheppard@fenwick.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Robert S. Green**
  gnecf@classcounsel.com

- **Kaitlin O Keller**
  kkeller@fenwick.com,bmeissner@fenwick.com,apetrocelli@fenwick.com,fkelley@fenwick.com,dsheppard@fenwick.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com

- **Marisa C. Livesay**
  livesay@whafh.com,boyles@whafh.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,recordsecf@fenwick.com,acaloza@fenwick.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Rachele R. Rickert**
  rickert@whafh.com,cabrera@whafh.com,boyles@whafh.com,loritsch@whafh.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create

notices or labels for these recipients.

- `(No manual recipients)`