**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Email: info@glancylaw.com

*Liaison Counsel for proposed Co-Lead Plaintiff*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BODI, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GOPRO, INC., NICHOLAS WOODMAN, and JACK LAZAR,<br><br>    Defendants. | Case No. 3:16-cv-00232-JST<br><br>**MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Date:         April 21, 2016<br>Time:        2:00 p.m.<br>Courtroom: 9<br>Judge:       Hon. Jon S. Tigar<br><br>ORAL ARGUMENT REQUESTED |

(Caption continued on following page.)

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD
PLAINTIFF AND LEAD COUNSEL
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

| | | |
|---|---|---|
| 1 | BARRY LEE DEEM, on behalf of himself and all others similarly situated, | Case No. 3:16-cv-0338-JST |
| 2 | | |
| 3 | Plaintiff, | |
| 4 | v. | |
| 5 | GOPRO, INC., NICHOLAS WOODMAN, and JACK LAZAR, | |
| 6 | Defendants. | |
| 7 | RENE VAN MEERBEKE, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:16-cv-00598-JST |
| 8 | | |
| 9 | Plaintiff, | |
| 10 | v. | |
| 11 | GOPRO, INC., NICHOLAS D. WOODMAN, JACK R. LAZAR and ANTHONY J. BATES, | |
| 12 | | |
| 13 | | |
| 14 | Defendants. | |
| 15 | MAJESTY PALMS, LLLP, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:16-cv-00845-CW |
| 16 | | |
| 17 | Plaintiff, | |
| 18 | v. | |
| 19 | GOPRO, INC., NICHOLAS WOODMAN, and JACK LAZAR, | |
| 20 | | |
| 21 | Defendants. | |

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

# **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    A.    The Only Way to Ensure Options Traders' Interests Are Adequately Protected Is to Appoint Gao as Co-Lead Plaintiff ....................................................... 1

    B.    The Failure to Appoint Gao Could Create Needless Complications, Prejudice the Claims of Options Traders, and Threaten Judicial Economy ............ 4

        1.    Options Claims Would Be at Risk of Being Dismissed .............................. 4

        2.    Options Traders Could Be Excluded from the Class Entirely ..................... 5

        3.    Options Traders Could Be Undercompensated or Ignored in Allocating a Recovery .................................................................................. 8

CONCLUSION ........................................................................................................................ 10

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL    i
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 PKC, 2011 WL 3211472 (S.D.N.Y. July 29, 2011) ...................... 4, 8

*Chill v. Green Tree Fin. Corp.*,
    181 F.R.D. 398 (D. Minn. 1998) ................................................................................................ 5

*In re Commc'ns Sys., Inc.*,
    No. C 00-1967 MHP, 2003 WL 21383824 (N.D. Cal. Feb. 24, 2003) ...................................... 1

*In re Critical Path, Inc.*,
    No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) .................................. 9

*Fishbury, Ltd. v. Connetics Corp.*,
    No. 06 CIV. 11496 (SWK), 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ............................. 9

*Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*,
    No. CIV.A. 4:08-CV-1810, 2009 WL 1941864 (S.D. Tex. July 6, 2009) ................................ 4

*In re LDK Solar Sec. Litig.*,
    No. C 07-05182 WHA, 2010 WL 598361 (N.D. Cal. Feb. 17, 2010) ...................................... 1

*Miller v. Ventro Corp.*,
    No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .............................. 2, 3, 4, 5

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    293 F.R.D. 483 (S.D.N.Y. 2013) .................................................................................. 6, 7, 10

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................................................. 7

*In re Royal Bank of Scotland Grp. PLC Sec. Litig.*,
    765 F. Supp. 2d 327 (S.D.N.Y. 2011) ..................................................................................... 5

*In re Veritas Software Corp. Sec. Litig.*,
    496 F.3d 962 (9th Cir. 2007) .................................................................................................. 8

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) .................................................................................... 5

*In re Zynga Inc. Sec. Litig.*,
    No. C 12-04007 JSW, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014) ....................................... 5

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

ii

3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

**STATUTES**

15 U.S.C. § 78c(a)(1) ............................................................................................................................1

Private Securities Litigation Reform Act ........................................................................................1, 2

Securities Exchange Act of 1934 .........................................................................................................1

Eight motions have been filed for appointment of lead plaintiff and lead counsel, on behalf of the Majesty Palms Group (Dkt. 15); Michael Kadera (Dkt. 16); the Fedon Group (Dkt. 21); the GoPro Group (Dkt. 26); Bending Spoon ApS (Dkt. 31); Camia Investment LLC (Dkt. 32); Azim Maknojia (Dkt. 36); and Zhao Gao (Dkt. 40).

The Court is now tasked with appointing "the member or members" of the class who can most adequately prosecute this case on the class' behalf, consistent with the requirements of the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4. No other movant appears to adequately represent options traders, or have a larger options-related loss, than Movant Zhao Gao ("Gao"). Additionally, unless an adequate options trader is appointed at this juncture, there is a distinct possibility that options traders' interests will be inadequately protected and that otherwise avoidable litigation may result. Accordingly, Gao respectfully submits that the Court should appoint Gao as Co-Lead Plaintiff to represent options traders.

## ARGUMENT

### A. The Only Way to Ensure Options Traders' Interests Are Adequately Protected Is to Appoint Gao as Co-Lead Plaintiff

In this securities class action, it is alleged that GoPro, Inc. ("GoPro" or the "Company") defrauded investors by making false statements about, among other things, the GoPro Hero4 Session camera. As the truth came out, GoPro's stock price dropped, causing losses to investors. As evidenced by Gao's trading records, options traders suffered real losses[1] – losses that are no

---

[1] That options like the ones traded by Gao are "securities" within the meaning of the Securities Exchange Act of 1934, and subject to Section 10(b) and Rule 10b-5, is well-settled. *See, e.g.*, 15 U.S.C. § 78c(a)(1) (defining "security" to include "any put, call, straddle, option, or privilege on any security"). Indeed, numerous securities class actions in this District have included the claims of sellers of put options and buyers of call options. *See, e.g.*, *In re Commc'ns Sys., Inc.*, No. C 00-1967 MHP, 2003 WL 21383824, at *5 (N.D. Cal. Feb. 24, 2003); *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2010 WL 598361, at *1 (N.D. Cal. Feb. 17, 2010).

1  less concrete than common stockholders' losses. Thus, their interests deserve protection from the
2  outset of this litigation.[2]

3  No movant other than Gao is adequate to the task.[3] The best way forward, and the best
4  way to avoid needless complications down the road, is to appoint Gao as Co-Lead Plaintiff now,
5  or, in the alternative, to create an options subclass and appoint Gao as Co-Lead Plaintiff thereto.
6  Not only is this path well within the Court's authority, *see Miller v. Ventro Corp.*, No. 01-CV-
7  1287, 2001 WL 34497752, at *9 (N.D. Cal. Nov. 28, 2001) ("[T]he decision to create a separate
8  class or co-lead plaintiffs is within the discretion of the Court"), it has no appreciable downside.[4]

9  In *Miller*, Houx, a bondholder, argued that his claims differed from those of stockholders
10  because the legal issues pertaining to bondholders' claims were different. For example,

---

[2] This is particularly so because GoPro options consistently had some of the highest options trading volumes of the more than 3,000 companies whose options trade on the Chicago Board Options Exchange (the largest options exchange in the U.S.), between October 2014 and January 2016, inclusive (the approximate timeframe covered by the longest alleged class period). Based on publicly available data, during that time, more than 3.8 million options contracts, covering 380 million underlying GoPro common shares with a total market value of approximately $20 billion, were traded.

[3] Among the competing movants, the only options trader other than Gao is Isaac Benpofat, a member of the Majesty Palms Group. (The Majesty Palms Group's memorandum spells his name "Benporat," but it appears it should be "Benpofat." *See* Dkt. 15-4 at 17.) However, in terms of financial interest, Gao's $89,093 options loss far exceeds Benpofat's $360 *gain*. *See* Dkt. 15-5 at 2 (Majesty Palms Group loss chart). This creates a rebuttable presumption that Gao is the most adequate movant to represent options traders. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

[4] To the extent competing movants argue that the addition of Gao will make the case unmanageable, such arguments are not credible. The competing movants with the largest non-options losses are large, disparate groups composed of unrelated individuals and entities. In light of that, they cannot credibly argue that adding Gao will somehow tip the case from manageability into unmanageability. Additionally, Cohen Milstein and Glancy Prongay have long track records of working efficiently, cooperatively, and in a non-duplicative manner with co-counsel in securities class actions. Accordingly, Gao's selection of Cohen Milstein and Glancy Prongay to represent options traders will also not adversely affect the management of the case. Indeed, given the potential conflicts discussed herein, options traders will benefit from separate legal representation.

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL    2
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

1 bondholders were entitled to rescissionary damages under Section 12(a)(2) of the Securities Act, 2 did not bear the burden of proving scienter, etc. *Id.* at *3-4. Thus, Houx requested either that 3 bondholders' actions not be consolidated, or that a bondholder subclass be created, or that, at the 4 very least, a bondholder be appointed as co-lead plaintiff. *Id.* at *9. The movant group with the 5 largest overall loss argued that none of these steps was necessary, because Aber, one of its 6 members, was a bondholder, and could adequately represent bondholders' interests. *Id.*

7 The court in *Miller* noted that the very fact that the group offered Aber to represent 8 bondholders demonstrated that the group "acknowledge[d] that the bondholders' interest may not 9 be co-extensive with the stockholders' interests." *Id.* The court then concluded that "there are 10 potential differences between the bondholders and stockholders such that a bondholder *must* be 11 included as a lead plaintiff." *Id.* at *11 (emphasis added). Because Houx's bond losses were 12 greater than Aber's, the court then appointed Houx as co-lead plaintiff for the bondholders, to 13 ensure the "*entire* putative class of litigants" was represented, *id.* (emphasis added), particularly 14 "[i]n situations in which the bondholders' interests are separate and independent of the 15 stockholders' interest." *Id.*

16 Here, Gao is in the same position as Houx. Like bondholders, options traders have 17 different interests than common stockholders at several stages in the case. For example, options 18 traders have a vested interest in ensuring their trades are encompassed by the class definition, 19 and that the class definition is not limited to common stockholders. Common stockholders have 20 no such interest. Indeed, to the extent such a definition reduces their share of any potential 21 recovery, common stockholders may even have the opposite interest. As another example, in the 22 event of a judgment that creates a common fund, options traders have a vested interest in 23 maximizing their share of that fund. Common stockholders do not, and indeed, may have the 24 opposite interest. Indeed, as will be discussed in more detail below, the history of private 25 securities litigation is replete with examples of instances where options traders have been

26

27 MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD   3
28 PLAINTIFF AND LEAD COUNSEL

excluded from the class definition after initially being included, or where they have been excluded from plans of allocation of settlement funds.

As in *Miller*, these differences are clearly sufficient to require that options traders be separately represented to ensure they are not ignored by common stockholders. Just as the appointment of Houx, the bondholder with the largest bond loss, as co-lead plaintiff was the solution in *Miller*, so too is the appointment of Gao, the options trader with the largest options loss, *see supra* n. 3, as Co-Lead Plaintiff the solution here.[5]

### B. The Failure to Appoint Gao Could Create Needless Complications, Prejudice the Claims of Options Traders, and Threaten Judicial Economy

#### 1. Options Claims Would Be at Risk of Being Dismissed

The risks of failing to ensure the adequate protection of option traders' interests are most evident in cases where those risks materialized into needless litigation. For example, in *In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 PKC, 2011 WL 3211472, at *12 (S.D.N.Y. July 29, 2011), the class was originally defined to include "owners of call options purchased during the class period and put options sold during the class period." *Id.* at *12. However, the lead plaintiffs that the court appointed were not significant options traders. As a result, the defendants argued that "these claims should be dismissed because the class plaintiffs did not themselves purchase or sell these securities, and therefore lack Article III standing to bring a justiciable claim." *Id.*

The court largely agreed. It noted that only one plaintiff "purchased 10 call options for $35 and sold them for $14.50, for a loss of more than $20. This class representative's call options

---

[5] *Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, No. CIV.A. 4:08-CV-1810, 2009 WL 1941864, at *3 (S.D. Tex. July 6, 2009), is also instructive. There, the court allowed preferred stockholders to appoint a separate lead plaintiff, after the previously appointed lead plaintiff, who was a common stockholder, filed an amended complaint that excluded preferred stockholders.

were callable in January 2011." *Id.* at *14 (citation omitted). The court thus held that "lead plaintiffs have standing to pursue claims solely on behalf of holders of January 2011 call options." *Id.*[6]

Here, there is a similar risk that a lead plaintiff group that does not include an options trader with significant options trading will invite attacks on standing. As mentioned, the only options trader other than Gao was Benpofat. But Benpofat only traded a handful of options, largely outside the critical July 21, 2015 through January 13, 2016 class period (the period alleged by three of the four above-captioned actions), and made a $360 *profit*. *See* Dkt. 15-4 at 17; Dkt. 15-5 at 2. These characteristics make him considerably more vulnerable to standing attacks than Gao, particularly if the class period narrows as the case proceeds (as a result of a partially granted motion to dismiss, for example). Appointing Gao as Co-Lead Plaintiff substantially forecloses such attacks.[7]

### 2. Options Traders Could Be Excluded from the Class Entirely

Another complication that has arisen in other securities cases is the outright exclusion of options traders from the class definition. Indeed, certain options traders are *already* excluded by

---

[6] Notably, the court rejected an attempt by Dornfest, an options trader, to "provide[] standing for lead plaintiffs to pursue all BofA options claims," on the grounds that "Dornfest is not a named class representative, [such that] his purchases do not establish standing to pursue classwide claims." *Id.* at 14 n. 11.

[7] Indeed, many courts have dismissed claims relating to securities in which the lead plaintiffs did not transact for lack of standing. *See, e.g.*, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (dismissing claims because lead plaintiff(s) lacked standing); *In re Zynga Inc. Sec. Litig.*, No. C 12-04007 JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (same); *In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (same). This risk can be, and thus should be, eliminated entirely as to options claims by appointing Gao. *See, e.g.*, *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998) ("[O]ur role is not to resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough" to warrant prophylactic measures.)

the class definitions in the above-captioned actions. All four actions confine the class to "purchasers" or "acquirers" of GoPro securities, and the *Deem* action (3:16-cv-00338-JST) further limits that definition to purchasers of GoPro's "publicly traded Class A common stock." Thus, options traders are totally excluded from the *Deem* action's definition of the class. And *sellers* of put options, who are no less harmed by fraud than are purchasers of call options, are also excluded by all the definitions to the extent that such sellers never "purchased" or "acquired" GoPro securities. If Gao is appointed, he will ensure that the class is defined to include at least buyers of GoPro call options *and* sellers of GoPro put options, eliminating this needless gap. Indeed, Gao's raising of this issue now is evidence that only an options trader will be motivated to ensure other options traders are fully protected, and evidence of the concrete benefit Gao brings to the case.

More generally, unless Gao is appointed, there can be no guarantee that options traders will be included *at all* in the case going forward. Indeed, in *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 485 (S.D.N.Y. 2013), that is precisely what happened. Although options traders were initially part of the case, the lead plaintiff's amended complaint did "not assert claims on behalf of purchasers or sellers of EDU option contracts." *Id.* at 485. This was so even though counsel for the lead plaintiff initially represented to counsel for an options trader that options traders' claims would be pursued. *Id.*

The lead plaintiff claimed that this decision was based on fears that options claims could not meet certain class certification requirements because "option contracts were [too] thinly traded … to substantiate the use of the fraud-on-the-market doctrine." *See In re New Oriental*, No. 12-cv-05724-JGK, Dkt. 47 (S.D.N.Y. Apr. 26, 2013) (lead plaintiff's opposition brief).[8] The

---

[8] To the extent competing movants raise similar arguments against Gao, *e.g.*, that his claims invite unique defenses or raise complicated class-certification issues, such arguments only **highlight** the need for Gao to be appointed.

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

6

3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

1  options trader then requested either appointment as co-lead plaintiff, or severance and permission
2  to proceed with a separate class action. *In re New Oriental*, 293 F.R.D. at 484. The defendants
3  and the existing lead plaintiff strongly opposed, arguing, among other things, that severance
4  would "result in an 'ecosystem' of additional class actions for all of the claims that the lead
5  plaintiff excises," and that the existing lead plaintiff's authority to define the class should not be
6  disturbed. *Id.* at 488.

7  In a careful analysis, the court agreed that the failure to include options traders posed a
8  substantial problem, including because options traders no longer benefited from *American Pipe*
9  tolling as a result of being omitted from the class, thus creating substantial "statute of limitations
10 repercussions." *Id.* at 487. Further, in response to the existing lead plaintiff's claims that the
11 options class plaintiffs could not rely on the fraud-on-the-market doctrine, the court noted that to
12 accept that argument without permitting severance "would have the effect of peremptorily
13 dismissing the options class claims without any briefing on whether such a dismissal was
14 warranted." *Id.* at 488. Thus, "in order to protect the potential options class," the court severed
15 the option trader's case and ordered that he "may pursue his claims on an individual basis and
16 can seek to have a class certified if he can satisfy all of the requirements for such a class action."
17 *Id.* at 488.

18 *In re New Oriental* actually represents a relatively positive outcome for options traders,
19 insofar as other cases have left options traders with substantially less recourse, if any, when they
20 are excluded from the class definition. For example, in *Richman v. Goldman Sachs Grp., Inc.*,
21 274 F.R.D. 473, 476 (S.D.N.Y. 2011), the court rejected Bochner's, an options trader's,
22 application for appointment as co-lead plaintiff, despite Bochner's argument that the other
23 movants would not adequately protect options traders. In so doing, the court noted that "the
24 option claims raised by Ms. Bochner can be handled in other ways which fully protect the
25 interests of her proposed class," but did not elaborate on what those methods were. *Id.* at 477.
26 Later, when the appointed lead plaintiffs filed their consolidated complaint and class certification

27 MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD      7
28 PLAINTIFF AND LEAD COUNSEL
   3:16-cv-00232-JST; 3:16-cv-0338-JST;
   3:16-cv-00598-JST; 4:16-cv-00845-CW

motions, options traders were not included. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-03461-PAC, Dkt. 68 (S.D.N.Y. July 25, 2011) (consolidated complaint) (covering only "purchasers" of Goldman securities, and thus omitting at least put option sellers); *see also In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-03461-PAC, Dkt. 136 (S.D.N.Y. Jan. 30, 2015) (class certification motion) (covering only Goldman "common stock," and thus definitively excluding options traders).

As for the *Bank of America* case described above, Dornfest, the options trader whose attempt to protect options traders' interests was rebuffed, later tried to vindicate those interests by filing a separate class action on behalf of Bank of America options traders. *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 PKC, 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011). However, the court rejected *that* attempt as well, essentially deferring to the lead plaintiffs' decision to abandon options traders. *Id.* Instead, the court only permitted Dornfest to pursue his claims individually. *Id.* at *2.

### 3. Options Traders Could Be Undercompensated or Ignored in Allocating a Recovery

Even if the class definition does end up including options traders, that is no guarantee that their interests will be protected throughout the case. For example, in *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 967 (9th Cir. 2007), although the complaint's class definition included options traders, the initial settlement agreement only covered "purchasers of VERITAS common stock." *Id.* at 965. Only after an options trader objected was the lead plaintiff forced to include options traders in the settlement, nearly five months after the initial settlement had been reached. *Id.* at 966. Yet, even then, the revised settlement limited the claims of options traders to a mere 2% of the recovery, drawing further objections. *Id.* at 968. This led to substantial additional litigation over the settlement, including an appeal to the Ninth Circuit. The Ninth Circuit

1  ultimately did not rule on the fairness of the 2% cap, vacating the district court's judgment on
2  other grounds.[9]

3  Of course, if the case is settled and the class definition does *not* include options traders,
4  Gao and others like him will be even less protected. In *In re Critical Path, Inc.*, No. C 01-00551
5  WHA, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002), the court rejected out of hand an
6  option trader's objection that a "settlement unjustly excludes investors who purchased call
7  options or sold put options during the class period," because the "consolidated complaint did not
8  mention options" and claims based on options were "outside the scope of the case."[10]

9  The above cases are clear examples of the complications that can arise from the failure to
10 ensure the interests of a distinct group, such as options traders, are adequately protected at the
11 outset of a class action. Importantly, not only were options traders' interests prejudiced in these

---

[9] After omitting options traders completely, the lead plaintiffs then defended the 2% cap by arguing that calculating damages for options traders was too complicated. These kinds of disputes only further highlight the need for options traders to have their own representative throughout the case, and the benefits such representation can provide. For example, in *In re Enron Sec. Litig.*, No. H-01-3624 (S.D. Tex.), after a plan of allocation was filed, note purchasers objected, arguing that the plan disadvantaged them. They were then able to negotiate a plan of allocation that better protected note purchasers. *See In re Enron Sec. Litig.*, No. H-01-3624, Docket No. 5764, Opposition to Plan of Allocation (S.D. Tex.).

[10] Indeed, because Gao and options traders might simply be defined out of the class by the amended complaint or by the class certification motion, it is not enough to say that any potential conflicts or issues, such as issues related to standing, can be resolved later. For example, in *Fishbury, Ltd. v. Connetics Corp.*, No. 06 CIV. 11496 (SWK), 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006), the options trader argued that unless it was appointed co-lead plaintiff, a competing movant would lack standing to pursue claims on behalf of options traders. The court rejected that argument, and said the issue could be resolved later, should it arise, by the "designation of other members of the purported class as named plaintiffs or class representatives." *Id.* at *4. However, as the above cases demonstrate, the danger is not merely that a lead plaintiff will lack standing. It is that a lead plaintiff will simply choose not to include options traders in the class definition. If that were to occur, Gao, and others like him, will have little meaningful recourse. Options traders would not even be class members, let alone have the ability to try to become class representatives.

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL   9
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

cases, but judicial resources were unnecessarily wasted as a result. Notably, it seems clear that much of that waste could have been avoided by the early appointment of an options trader as a co-lead plaintiff. It is also evident, based on the *In re New Oriental* case, that the mere promise by a party to pursue options traders' claims as the case proceeds is no guarantee that the party will actually do so.

Here, the Court has the ability to foreclose all such complications at the outset by appointing Gao as Co-Lead Plaintiff. Among other things, doing so has the significant benefits of ensuring that options traders are not arbitrarily (and without representation) excluded from the class definition, and that they are adequately represented in the event of a recovery. Moreover, there is virtually no downside risk to so doing. Accordingly, the Court should appoint Gao as Co-Lead Plaintiff, and approve Gao's selection of Cohen Milstein as Co-Lead Counsel.

## CONCLUSION

For all the foregoing reasons, Gao respectfully requests that his motion be granted.

Dated: March 28, 2016                    Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: *s/Lionel Z. Glancy*
Lionel Z. Glancy (#134180)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Email: info@glancylaw.com

*Liaison Counsel for Proposed Lead Plaintiff*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (*pro hac vice* forthcoming)
S. Douglas Bunch (*pro hac vice* forthcoming)
Times Wang (#281077)
1100 New York Avenue NW, Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600
Email: stoll@cohenmilstein.com
           dbunch@cohenmilstein.com

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL      10
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW

twang@cohenmilstein.com

*Attorneys for Proposed Co-Lead Plaintiff Zhao Gao and Proposed Co-Lead Counsel for the Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On March 28, 2016, I caused to be served the following document:

**MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

By posting the documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as reflected on the Court's ECF Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 28, 2016, at Los Angeles, California.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

MOVANT ZHAO GAO'S RESPONSE TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
3:16-cv-00232-JST; 3:16-cv-0338-JST;
3:16-cv-00598-JST; 4:16-cv-00845-CW