ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
      – and –
DANIELLE S. MYERS (259916)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BODRI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       vs.<br><br>GOPRO, INC., et al.,<br><br>                              Defendants. | Case No. 3:16-cv-00232-JST<br><br>CLASS ACTION<br><br>CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF<br><br>DATE:        April 21, 2016<br>TIME:        2:00 p.m.<br>CTRM:       9, 19th Floor |

1134619_1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................1

     A.     No Movant Has Rebutted the Presumption that Camia Investment Is the
           Most Adequate Plaintiff ..............................................................................2

     B.     The GoPro Group's Belated Attempt to Evidence Its Adequacy Confirms
           It Is an Improper Lawyer-Driven Grouping............................................4

     C.     The Majesty Palms Group's Attempt to Switch Financial Interest Metrics
           and Silence About Bending Spoons' Competing Motion Confirms It Is
           Not Well-Suited for Appointment as Lead Plaintiff ................................6

     D.     The Majesty Palms Group's Attempt to Conjure a "Scheme" to Justify Its
           Revised Class Period Fails for Lack of Any Act by a Defendant...........8

     E.     Zhao Gao's Speculation About Remote Possibilities Does Not Justify
           Appointing Co-Lead Plaintiffs..................................................................9

III.    CONCLUSION....................................................................................................10

- i -

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,

5
2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) ........................................................6

6

*Cook v. Atossa Genetics, Inc.*,
2014 U.S. Dist. LEXIS 19218 (W.D. Wash. Feb. 14, 2014) ..............................................5

7

*Cortes v. Mkt. Connect Grp., Inc.*,

8
2015 U.S. Dist. LEXIS 133750 (S.D. Cal. Sept. 30, 2015) ................................................3

9

*Deering v. Galena Biopharma, Inc.*,
2014 U.S. Dist. LEXIS 140766 (D. Or. Oct. 3, 2014) ........................................................5

10

*Duane & Virginia Lanier Trust v. Sandridge Energy, Inc.*,

11
2016 U.S. Dist. LEXIS 33638 (W.D. Okla. Mar. 16, 2016) ...............................................5

12

*Elstein v. Net 1 UEPS Techs., Inc.*,

13
2014 U.S. Dist. LEXIS 100574 (S.D.N.Y. July 23, 2014) ..................................................7

14

*Goldstein v. Puda Coal, Inc.*,

15
827 F. Supp. 2d 348 (S.D.N.Y. 2011) .................................................................................5

16

*Harris v. Vector Mktg. Corp.*,
753 F. Supp. 2d 996 (N.D. Cal. 2010) ................................................................................3

17

*In re Bally Total Fitness Sec. Litig.*,

18
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) .....................................................6

19

*In re Bank of Am. Corp. Auction Rate Sec. Litig.*,
2009 U.S. Dist. LEXIS 81946 (N.D. Cal. Aug. 26, 2009) ..................................................5

20

21

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002)...............................................................................................1

22

*In re Cendant Corp. Litig.*,

23
182 F.R.D. 144 (D.N.J. 1998) ........................................................................................9, 10

24

*In re CMED Sec. Litig.*,
2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012)......................................................8

25

*In re Critical Path, Inc.*,

26
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..............................................................................7

27

*In re Diamond Foods, Inc.*,

28
281 F.R.D. 405 (N.D. Cal. 2012) ........................................................................................6

1134619_1

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                    - ii -

**Page**

*In re Molycorp, Inc. Sec. Litig.*,
  2012 U.S. Dist. LEXIS 89191 (D. Colo. May 29, 2012) ..........................................5

*In re Nature's Sunshine Prods., Inc.*,
  2006 WL 2380965 (D. Utah Aug. 16, 2006) .........................................................6

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................7

*In re Red Hat, Inc. Sec. Litig.*,
  261 F.R.D. 83 (E.D.N.C. 2009) .........................................................................3

*In re Watchguard Sec. Litig.*,
  2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ..................................7

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
  2006 U.S. Dist. LEXIS 57713 (W.D. Wash. Aug. 16, 2006) ................................3

*Marsh v. First Bank of Del.*,
  2014 U.S. Dist. LEXIS 17577 (N.D. Cal. Feb. 7, 2014).....................................3

*Newman v. Eagle Bldg. Techs.*,
  209 F.R.D. 499 (S.D. Fla. 2002) .......................................................................4

*Nicolow v. Hewlett Packard Co.*,
  2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013)..............................6, 7, 8

*Olson v. Brown*,
  284 F.R.D. 398 (N.D. Ind. 2012) ......................................................................3

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ..................................6

*Polanco v. Schneider Nat'l Carriers, Inc.*,
  2012 U.S. Dist. LEXIS 190050 (C.D. Cal. Apr. 25, 2012)..................................3

*Richardson v. TVIA, Inc.*,
  2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ..................................6

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................8, 10

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) ....................................5

*Sloane v. Gulf Interstate Field Servs.*,
  2016 U.S. Dist. LEXIS 29458 (W.D. Pa. Mar. 8, 2016)....................................3

1134619_1

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                    - iii -

Page

*Smilovits v. First Solar, Inc.*,
  2012 U.S. Dist. LEXIS 102032 (D. Ariz. July 23, 2012) ....................................1, 10

*Weisman v. Darneille*,
  78 F.R.D. 669 (S.D.N.Y. 1978) .........................................................................4

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
  2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 25, 2006) ....................................8

*Weisz v. Calpine Corp.*,
  2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) .................................7

*West Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
  57 F. Supp. 3d 950, 977 (D. Minn. 2014) ..........................................................8

*Wood v. Capital One Auto Fin., Inc.*,
  2006 U.S. Dist. LEXIS 67513 (E.D. Wis. Sept. 19, 2006) ................................3

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011)............................................................................9

*Yanek v. Staar Surgical Co.*,
  2004 U.S. Dist. LEXIS 30953 (C.D. Cal. Dec. 15, 2004) .................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.,
  §78u-4(a)(3)(B)..................................................................................................1
  §78u-4(a)(3)(B)(iii).............................................................................................1
  §78u-4(a)(3)(B)(iii)(II)........................................................................................1

Federal Rules of Civil Procedure
  Rule 10b-5(a) ...............................................................................................8, 9
  Rule 10b-5(b) ..........................................................................................4, 8, 9
  Rule 10b-5(c) ...................................................................................................8
  Rule 23 ...............................................................................................................1

1134619_1

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                                      - iv -

I.      **INTRODUCTION**

The Court's task in selecting a lead plaintiff has become easier as half of the original movants concede they are ineligible for the presumption.[1]  And of the remaining movants, it is readily apparent that Camia Investment LLC is the only one that qualifies for the "most adequate plaintiff" presumption.  15 U.S.C. §78u-4(a)(3)(B)(iii).

In fact, all but one of the competing movants raised no opposition to Camia Investment's motion other than pointing out its relatively lower losses.  And, the lone movant that conclusorily opposed Camia Investment's motion did so based upon flawed reasoning that is contrary to well-settled law regarding the adequacy standard for class representatives. *See infra* §II.A.  Accordingly, because no "proof" sufficient to rebut the presumption in Camia Investment's favor has been proffered, its motion should be granted.  *See* 15 U.S.C. §78u-4(a)(3)(B).

By contrast, the remaining competing motions' opposition briefs further undermine their requests for appointment as lead plaintiff.  Their motions should be denied.

II.     **ARGUMENT**

At the third step of the lead plaintiff process, the district court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The statute makes clear that more than arguments are required to rebut the presumption – it may be rebutted 'only upon proof by a member of the purported plaintiff class' that the presumptive plaintiff will not adequately and fairly protect the interests of the class." *Smilovits v. First Solar, Inc.*, 2012 U.S. Dist. LEXIS 102032, at *5 (D. Ariz. July 23, 2012) (emphasis omitted) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).

No competing movant has proffered the requisite "proof" that Camia Investment would not adequately represent the class or that its claims are not typical of the class.

---

[1]     *See* Dkt. No. 51 (acknowledging that the Fedon Group is not the presumptive lead plaintiff); Dkt. No. 56 (acknowledging that Michal Kadera is not the presumptive lead plaintiff); Dkt. No. 52 (withdrawing Bending Spoons ApS' individual motion).  Azim Maknojia did not file an opposition brief and is presumably no longer pursuing the motion.

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                                    - 1 -

A.   **No Movant Has Rebutted the Presumption that Camia Investment Is the Most Adequate Plaintiff**

The only movant that substantively opposed Camia Investment's motion is the GoPro Group, which asserted in a single sentence that Camia Investment is "inadequate" because its President "'pled guilty to making false statements . . . in violation of federal law.'"  Dkt. No. 49 at 8.  In making this accusation, the GoPro Group omitted several pertinent facts, including that the conduct for which Mr. Khoroushi paid a $200,000 fine – shipping ballistic helmets to Suriname without first obtaining a license from the U.S. Department of Commerce – occurred **14 years ago**, in 2002.  *See* Dkt. No. 50-2.[2]  The GoPro Group also failed to inform the Court that before, during, and after this incident, the U.S. government, including the Department of Justice, entered into and performed supply contracts with Mr. Khoroushi's other business:

- For a decade between 2006 and 2016, Alpine Armoring had a multi-year contract with the U.S. Department of Defense for armored vehicles, SWAT trucks, body armor, ballistic helmets, armored plates and ballistic/bomb blankets.  *See* Declaration of Danielle S. Myers in Support of Camia Investment LLC's Reply Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff ("Myers Reply Decl."), Ex. A.

- In September 2007, Alpine Armoring was awarded a contract with the U.S. Department of the Army for 60 armored vehicles.  *See id.*, Ex. B.

- In 2011, Alpine Armoring was awarded a contract with the U.S. Department of Justice for 13 armored vehicles.  *See id.*, Ex. C.

- As the U.S. General Services Administration's website confirms, Alpine Armoring is not on the "Excluded Parties List System."  *See id.*, Ex. D.

While Camia Investment wholeheartedly agrees that integrity is an essential characteristic that a lead plaintiff should possess, nothing about the entirely unrelated 2002 incident for which a fine was paid is remotely relevant here, especially considering that several branches of the U.S. government subsequently entered into contracts with that same entity.

---

[2]   Mr. Khoroushi is the President of Camia Investment LLC, the entity seeking appointment as lead plaintiff in this case.  *See* Dkt. No. 33-2.  He is also the President of Alpine Armoring, Inc., a company that designs and manufactures armored vehicles, SWAT trucks, body armor, ballistic helmets, armored plates and ballistic/bomb blankets.  Alpine Armoring, not Camia Investment, shipped the helmets to Suriname.  *See* Dkt. No. 50-2.

Indeed, the "general rule is that 'unrelated unethical or even criminal conduct is not sufficient to support a finding of inadequacy.'" *Cortes v. Mkt. Connect Grp., Inc*., 2015 U.S. Dist. LEXIS 133750, at \*11 (S.D. Cal. Sept. 30, 2015); *Marsh v. First Bank of Del*., 2014 U.S. Dist. LEXIS 17577, at \*29-\*30 (N.D. Cal. Feb. 7, 2014) (finding that "defendants have not explained how Marsh's ability to represent the class is undermined by her drug-related plea" in case involving defendants' allegedly unlawful payday loan scam).[3]   The GoPro Group's authority from this District is in accord.  *See Harris v. Vector Mktg. Corp*., 753 F. Supp. 2d 996, 1015-16 (N.D. Cal. 2010) (finding that while there were "credibility problems" with the proposed class representative, the "credibility problems are not directly relevant to the claims" and did not impact adequacy) (emphasis omitted).

The GoPro Group did not identify any conduct by Camia Investment or Mr. Khoroushi that is related to this lawsuit or "so sharp as to jeopardize the interests of absent class members" such that Camia Investment's adequacy is impacted.  *Harris*, 753 F. Supp. 2d 1015-16; *see also In re Red Hat, Inc. Sec. Litig*., 261 F.R.D. 83, 88 (E.D.N.C. 2009) (despite defendants' allegation that plaintiff engaged in "hundreds of willful violations of the Gun Control Act's record keeping requirements, the ATF revoked the federal firearms license ('FFL') of one of Gilbert's businesses and denied an application for a FFL for another of his businesses," the court nonetheless found "that such conduct

---

[3]      *See also Sloane v. Gulf Interstate Field Servs*., 2016 U.S. Dist. LEXIS 29458, at \*21-\*22 (W.D. Pa. Mar. 8, 2016) (plaintiff's criminal record "immaterial" to whether defendants violated FLSA); *Polanco v. Schneider Nat'l Carriers, Inc*., 2012 U.S. Dist. LEXIS 190050, at \*11 (C.D. Cal. Apr. 25, 2012) (finding that defendants failed to "explain why a criminal offense that Taylor alleges is from 'decades ago,' . . . and that is unrelated to the issues in this litigation makes Taylor an inadequate Class Representative") (emphasis omitted); *Olson v. Brown*, 284 F.R.D. 398, 413 (N.D. Ind. 2012) (finding that defendants' questioning of plaintiff's credibility "on the basis of an almost eight year old conviction obtained pursuant to a plea agreement which has no substantive relation to this case" were "not so pervasive so as to jeopardize the interests of the absent class members" in a case challenging lack of access to a law library); *Wood v. Capital One Auto Fin., Inc*., 2006 U.S. Dist. LEXIS 67513, at \*8-\*11 (E.D. Wis. Sept. 19, 2006) (finding that 16-year old conviction for misappropriating company funds that "has no relation to this case" to be irrelevant because "there has been no subsequent conduct to suggest that Wood lacks the personal qualities necessary to represent a class in this civil suit"); *Kirkpatrick v. Ironwood Commc'ns, Inc*., 2006 U.S. Dist. LEXIS 57713, at \*20 (W.D. Wash. Aug. 16, 2006) (finding that plaintiff's "criminal history is almost a decade behind him, and there is no indication that his conviction will have a significant impact on his ability to represent class members").

Unless otherwise noted, all emphasis is added and citations are omitted.

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                    - 3 -

does not implicate Gilbert's credibility to the extent the court would deem him inadequate"); *cf.*
*Weisman v. Darneille*, 78 F.R.D. 669, 690-71 (S.D.N.Y. 1978) (plaintiff convicted of violating
§10(b) who "did not reveal the fact of his conviction to counsel . . . until the day before his
deposition," "testified falsely that his conviction was for a misdemeanor," and "testimony regarding
an unrelated S.E.C. inquiry and other litigation was similarly evasive" was not certified as class
representative in securities fraud action); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05
(S.D. Fla. 2002) (finding that two public citations for violation of the SEC's and NASD's rules
rendered a proposed lead plaintiff inadequate given concerns about possible defenses and his moral
character). Here, there are no apparent credibility problems with Camia Investment. Mr. Khoroushi
acknowledged the unlicensed shipment and paid a fine, which appears to have been good enough for
the United States.

Consequently, the GoPro Group's attempt to rebut the presumption in favor of Camia
Investment's appointment as lead plaintiff fails.

**B.      The GoPro Group's Belated Attempt to Evidence Its Adequacy
Confirms It Is an Improper Lawyer-Driven Grouping**

As Camia Investment anticipated, the GoPro Group submitted a declaration with its
opposition brief in an attempt to evidence the group's adequacy. *See* Dkt. No. 50-1. The Court
should decline to consider this late and conclusory declaration.

First, the declaration, submitted with a brief opposing the other movants' motions, was filed
after the motion and PSLRA deadline. *See* Dkt. No. 54 at 7 n.10 (citing authorities requiring
submission of evidence by motion deadline). Second, the declaration confirms that the GoPro Group
members were not even aware of one another before the motion was filed, much less considered the
implications of working together.[4] Both reasons demonstrate the group's unsuitability for
appointment as lead plaintiff.

In a similar situation, a district court was critical of a group that failed to demonstrate it was
not lawyer-driven, finding that "[n]o evidence has been presented that the members had any role in

---

[4]     *Compare* Dkt. No. 27-2 (stating that each individual was "willing to serve as a lead plaintiff
either individually or as part of a group") *with* Dkt. No 50-1 (earliest signature on joint declaration
dated March 25th, 11 days after the motion was filed on March 14th).

1134619_1

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                                  - 4 -

1    the decision to form or combine the groups." *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S.

2    Dist. LEXIS 40607, at *30 (C.D. Cal. May 2, 2006).  That court also declined to accept a late proffer

3    of evidence, stating that "there is no reason the Impac/IMH Group . . . could not have submitted such

4    evidence in connection with their initial motions."  *Id.* at *28 n.10.  Here, while the GoPro Group

5    belatedly submitted a declaration with its opposition brief, that declaration confirms that "the

6    decision to combine" the disparate members comprising the GoPro Group "was made by the groups'

7    counsel, with no apparent involvement by the group members" until after the motion was filed.  *Id.*

8    at *26.

9         The cases the GoPro Group cites in support of its lawyer-driven amalgamation offer little

10   support.  For example, the GoPro Group relies on *Yanek v. Staar Surgical Co.*, 2004 U.S. Dist.

11   LEXIS 30953 (C.D. Cal. Dec. 15, 2004) for the sweeping proposition that a "majority of courts have

12   permitted unrelated plaintiffs to aggregate their losses for the purposes of the lead plaintiff

13   determination."  Dkt. No. 49 at 6.  But, the court in *Yanek* approved an "unopposed motion."  2004

14   U.S. Dist. LEXIS 30953, at *3 (emphasis omitted).  The GoPro Group's reliance on *In re Bank of*

15   *Am. Corp. Auction Rate Sec. Litig.*, 2009 U.S. Dist. LEXIS 81946 (N.D. Cal. Aug. 26, 2009) is

16   similarly flawed as the renewed motion at issue in that decision was also unopposed and the court

17   specifically noted that "there is no suggestion in the record that [the members] were grouped

18   together in order to assemble a group with the largest financial interest in the litigation. . . . Rather,

19   based on the record before the Court, this group came together in response to the fact that the Sitrin

20   Group's claims had been mooted by the regulatory settlement with Defendants."  *Id.* at *9.  None of

21   the unrelated groups currently before the Court can say the same of their origins here.  The other

22   decisions the GoPro Group relies on to support its aggregation are all out-of-District and primarily

23   involved unopposed motions or instances in which only groups filed motions.[5]  None of these

24

25   ---
     [5]    *See Duane & Virginia Lanier Trust v. Sandridge Energy, Inc.*, 2016 U.S. Dist. LEXIS 33638
     (W.D. Okla. Mar. 16, 2016) (both movants were groups); *Deering v. Galena Biopharma, Inc.*, 2014
26   U.S. Dist. LEXIS 140766 (D. Or. Oct. 3, 2014) (only remaining movants were groups); *Cook v.
     Atossa Genetics, Inc.*, 2014 U.S. Dist. LEXIS 19218 (W.D. Wash. Feb. 14, 2014) (group appointed
27   despite failure to submit declaration with motion); *In re Molycorp, Inc. Sec. Litig.*, 2012 U.S. Dist.
     LEXIS 89191 (D. Colo. May 29, 2012) (group submitted joint declaration with its initial motion as
28   well as a supplemental joint declaration); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348
     (S.D.N.Y. 2011) (all the movants were groups and group with largest aggregated loss contained

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                              - 5 -

1  authorities override those from within *this* District and state holding otherwise. *See* Dkt. No. 54 at

2  5-9.

3          The GoPro Group's belated attempt to evidence its adequacy falls short. Its motion should

4  be denied.

5      **C.    The Majesty Palms Group's Attempt to Switch Financial Interest**
           **Metrics and Silence About Bending Spoons' Competing Motion**
6          **Confirms It Is Not Well-Suited for Appointment as Lead Plaintiff**

7          In its opening motion, the Majesty Palms Group emphasized its "losses" as indicative of its

8  financial interest. *See* Dkt. No. 15 at 2, 3, 5-6. So did each of the other movants. *See* Dkt. Nos. 32

9  at 7; 26 at 7; 21 at 2, 8; 16 at 6; 31 at 1, 6; 36 at 6; 40 at 9. And, this makes sense because courts in

10 this District agree that the "weight of authority puts the most emphasis on the competing movants'

11 estimated losses, using a 'last in, first out' ("LIFO") methodology." *Nicolow v. Hewlett Packard*

12 *Co.*, 2013 U.S. Dist. LEXIS 29876, at *19 (N.D. Cal. Mar. 4, 2013); *In re Diamond Foods, Inc.*, 281

13 F.R.D. 405, 408 (N.D. Cal. 2012) ("'approximate loss,' is generally considered the most important

14 factor"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 U.S. Dist. LEXIS 2776, at *11

15 (N.D. Cal. Jan. 9, 2012) (same); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813,

16 at *25 (N.D. Cal. Feb. 15, 2011) (same); *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at

17 *13-*14 (N.D. Cal. Apr. 16, 2007) (same).

18         After reviewing the competing motions and realizing it did not possess the greatest loss, the

19 Majesty Palms Group now urges the Court "to turn away from estimated losses and focus instead on

20 'net shares purchased' and the related calculation of which movant has the largest potential recovery

21 in the lawsuit as measured through a 'retained shares' analysis." *Nicolow*, 2013 U.S. Dist. LEXIS

22 29876, at *19; *see* Dkt. No. 53.[6] "Tellingly, [the Majesty Palms Group] itself made no reference to

23 

24 members that suffered the largest and second-largest individual losses of all the movants); *In re*
   *Nature's Sunshine Prods., Inc.*, 2006 WL 2380965 (D. Utah Aug. 16, 2006) (group appointed
25 despite failure to submit declaration with motion).

26 [6]     *See also In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *14-*15 (N.D.
   Ill. Mar. 15, 2005) ("[S]ome of the lead plaintiff candidates who are in the middle of the pack in
27 terms of losses . . . contend that we should also examine factors such as the number of shares
   purchased, the number of net shares purchased, and the total net funds expended by the plaintiff
28 during the class period . . . . It is not self-evident, though, what weight these factors should be given
   in relation to the amount of loss, or even why we should consider them at all. . . . We believe that

1    net shares purchased or a retained shares calculation in its opening motion seeking appointment as

2    lead plaintiff, shifting its argument only after [other movants] came forward with larger LIFO

3    losses." *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at \*19-\*20.

4         "Whether or not [the Majesty Palms Group] is correct that a retained shares calculation may

5    be preferable to a LIFO calculation in some cases, this is not such a case" because the "allegations

6    here involve multiple partial corrective disclosures" by defendants on two dates, October 28, 2015

7    and January 13, 2016.  *Id.*; *see Bodri* Complaint, ¶¶6, 8; *Deem* Complaint, ¶¶16, 20-21; *Van*

8    *Meerbeke* Complaint, ¶¶8, 11.  "As many district courts have observed, net shares purchased and a

9    'retained shares' calculation are less useful analytical tools where gradual disclosures are involved,

10   because those methods assume a constant 'fraud premium' throughout the class period." *Nicolow*,

11   2013 U.S. Dist. LEXIS 29876, at \*20; *Elstein v. Net 1 UEPS Techs., Inc.*, 2014 U.S. Dist. LEXIS

12   100574, at \*22 (S.D.N.Y. July 23, 2014) (recognizing that net shares purchased "'does not seem

13   terribly relevant to which movant has the greatest financial interest'").  "The most illuminating of the

14   four factors, therefore, is the plaintiff's approximate loss, the only factor that makes no assumptions

15   regarding the fraud premium."  *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at \*16

16   (W.D. Wash. July 13, 2005) (declining to use net shares method at lead plaintiff stage).[7]  Indeed,

17   "[c]alculating approximate loss under the PSLRA damage cap provides the only objective measure

18   of economic loss that does not depend on the fraud premium."  *Id.*  Accordingly, this Court should

19

20   _____

21   the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The
     inquiry need not and should not be complicated by also considering the number of shares or the net
     expenditures involved because those statistics do not advance the ball.").

22   [7]    The handful of cases employing the retained shares method assumed that the "fraud
23   premium" stayed constant throughout the class period because the complaint only alleged a single
     disclosure, not multiple disclosures as are alleged here. *Weisz v. Calpine Corp.*, 2002 U.S. Dist.
24   LEXIS 27831, at \*18 (N.D. Cal. Aug. 19, 2002); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102,
     1107-08 (N.D. Cal. 2001); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal.
25   1999).  In doing so, these courts acknowledged that using metrics other than losses "gets into trouble
     . . . if the amount of the 'fraud premium' varied over the course of the class period."  *Id.*  Indeed,
26   "[w]here the fraud premium fluctuates," as it does in this case, "neither the gross nor the net number
     of shares purchased is a good indicator of financial loss, since the loss depends on how large the
27   fraud premium was at the time of the purchase." *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at \*11.
     Rather, the "most illuminating of the four factors" is "approximate loss, the only factor that makes
28   no assumptions regarding the fraud premium."  *Id.* at \*16.

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                    - 7 -

1    "decline[] to give significant weight to net shares purchased and a retained shares calculation."

2    *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *20.[8]

3          Even assuming the Court is inclined to indulge the Majesty Palms Group's new financial

4    interest metric and overlook its other flaws, the group's deafening silence about Bending Spoons'

5    competing individual motion should alone preclude its consideration for appointment.  *See* Dkt. No.

6    53 at 1 n.1 (stating only that the individual motion was "withdrawn").  The Majesty Palms Group's

7    inability or unwillingness to explain this "blatant gaffe" should preclude its appointment.  *See* Dkt.

8    No. 54 at 14 (citing cases).

9          The Majesty Palms Group's motion should be denied.

10   **D.     The Majesty Palms Group's Attempt to Conjure a "Scheme" to**
            **Justify Its Revised Class Period Fails for Lack of Any Act by a**
11          **Defendant**

12         The Majesty Palms Group admits there are no misrepresentations by or attributable to a

13   defendant between November 2014 and April 2015 in the *Majesty Palms* Complaint.  Dkt. No. 53 at

14   5.  The Group nonetheless contends that its revised period is appropriate because "parts" of the

15   complaint "are based on scheme liability" which "is not contingent upon the defendant making a

16   specific misrepresentation or public statement."  Dkt. No. 53 at 5.  That too is entirely unsupported

17   by its complaint and its extension of the class period is therefore untenable.

18         To allege a scheme in violation of §10(b) and SEC Rule 10b-5(a) or (c), like Camia

19   Investment's counsel did in *Medtronic*, "'a plaintiff must allege ***that the defendant*** . . . committed a

20   deceptive or manipulative act.'"  *West Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,

21   57 F. Supp. 3d 950, 977 (D. Minn. 2014).[9]  Just as the *Majesty Palms* complaint contains no

22

23   [8]     *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478-79 (S.D.N.Y. 2011) (rejecting
     the argument that lead plaintiff "should be selected based on . . . larger net shares purchased and net
24   expenditures" in a case alleging partial disclosures); *In re CMED Sec. Litig.*, 2012 U.S. Dist. LEXIS
     47785, at *15 n.8 (S.D.N.Y. Apr. 2, 2012) (stating that court "is not aware of any case in this Circuit
25   . . . that has calculated losses [under the net shares method] for purposes of appointing a lead
     plaintiff where the pleadings allege partial corrective disclosures"); *Weiss v. Friedman, Billings,*
26   *Ramsey Grp., Inc.*, 2006 U.S. Dist. LEXIS 3028, at *14 (S.D.N.Y. Jan. 25, 2006) (finding that
     movant prevailed on net shares purchased "diminishes in importance upon the realization that, here,
27   partial corrective disclosures were reaching investors on a periodic basis").

28   [9]     It is also notable that the *Medtronic* complaint alleged a separate scheme liability cause of
     action for violation of Rule 10b-5(a) and (c), which the *Majesty Palms* complaint does not allege.

1    statement by or attributable to a defendant during the November 2014 – April 2015 period, it

2    similarly alleges no conduct by or attributable to a defendant during that period. *See Majesty Palms*

3    Complaint, ¶¶11-18. To the contrary, that complaint alleges speculation by the media and bloggers

4    about what products GoPro might, or might not, reveal at the Consumer Electronics Show in 2015.

5    *Id.* There are no allegations in the *Majesty Palms* complaint that any defendant played any role in

6    those rumors. *Id.* Consequently, because there are no allegations tying any statements or conduct to

7    a defendant in the *Majesty Palms* complaint, the time period is implausible. *See also* Dkt. No. 54 at

8    3-5 (articulating why allegations are "obviously frivolous" and should not be used for lead plaintiff

9    determination).

10    **E.    Zhao Gao's Speculation About Remote Possibilities Does Not Justify Appointing Co-Lead Plaintiffs**

11    Zhao Gao's request for appointment as co-lead plaintiff for options traders is predicated on a

12    hypothetical doomsday-scenario that *if* there is eventually a settlement in this case, options traders

13    *might* get less than stock investors or *maybe* nothing at all unless Zhao Gao has an equal seat at the

14    bargaining table. *See* Dkt. No. 57. This plea ignores the fact that courts regularly reject attempts by

15    movants like Zhao Gao with the smallest financial interest that traded in options to commandeer the

16    lead plaintiff appointment.

17    For example, in a similar situation as here, a group of investors "asserted that options-holders

18    should be explicitly represented because their interests might, at some point in the litigation, diverge

19    from those of the other shareholders." *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 147 (D.N.J.

20    1998). That court reasonably understood, however, that "[m]ore likely than not, the putative class in

21    any large shareholder action will be composed of plaintiffs whose portfolios differ in composition

22    from one another" which simply "does not justify the appointment of potentially innumerable co-

23    lead plaintiffs to ensure that each individualized interest is represented." *Id.* at 148. And, the court

24

25    *Compare* Myers Reply Decl., Ex. E *with Majesty Palms* Complaint at 18-22. This missing component is fatal to Majesty Palms' contention as the Ninth Circuit has made clear that it is "not

26    permissible" to simply recast "a Rule 10b-5(b) omissions claim . . . as [a] Rule 10b-5(a) or (c) scheme liability claim." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057

27    (9th Cir. 2011). Rather, the scheme must encompass "conduct beyond those misrepresentations or omissions." *Id.* That conduct – and cause of action – is precisely what is missing from the *Majesty*

28    *Palms* complaint. Without it, there is no scheme.

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                                    - 9 -

1   expressly acknowledged that "[c]ompeting movants may be correct that the resolution of this case

2   could ultimately favor holders of one type of security over the others." *Id.* But, "[o]n the other

3   hand, representation by a disparate group of plaintiffs, each seeking only the protection of its own

4   interests, could well hamper the force and focus of the litigation. A balance must be struck." *Id.*

5        Ultimately, that court sensibly recognized that "notwithstanding every plaintiff's undeniable

6   interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a

7   general." *Id.* And, absent a showing sufficient to rebut the presumption in favor of appointing the

8   most adequate plaintiff as lead plaintiff (here, Camia Investment), the self-interest of the various

9   factions do not militate in favor of multiple lead plaintiffs.[10]

10       Stated differently, this "Court [should not] conclude that the presumptive lead plaintiff is an

11  inadequate representative because a would-be lead plaintiff speculates about possible" future

12  developments concerning the contours of the case. *Smilovits*, 2012 U.S. Dist. LEXIS 102032, at

13  *16. Zhao Gao's motion should be denied.

14  **III.   CONCLUSION**

15       The presumption in favor of appointing Camia Investment as lead plaintiff has not been

16  rebutted. Its motion should be granted. The other motions should be denied.

17  DATED: April 4, 2016                    Respectfully submitted,

18                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
19                                          DANIELLE S. MYERS

20

21                                                    s/ Danielle S. Myers
                                            DANIELLE S. MYERS

22

23                                          655 West Broadway, Suite 1900
                                            San Diego, CA 92101
24                                          Telephone: 619/231-1058
                                            619/231-7423 (fax)

25

26  [10]    *See Richman*, 274 F.R.D. at 476-477 ("Of course, [the option trader's] argument skips over
    the facts that the dollar amount and her 'financial interest' are minimal to the point of being *de
27  minimis*. Her proposed relief would result in a very tiny tail wagging a very large dog. Finally, the
    option claims raised by Ms. Bochner can be handled in other ways which fully protect the interests
28  of her proposed class.").

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST                          - 10 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiff

CAMIA INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF – 3:16-cv-00232-JST

- 11 -

1     <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on April 4, 2016, I authorized the electronic filing of the foregoing with

3     the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4     e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5     caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6     CM/ECF participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that the

8     foregoing is true and correct.  Executed on April 4, 2016.

9                                             s/ Danielle S. Myers
                                          DANIELLE S. MYERS
10
                                          ROBBINS GELLER RUDMAN
11                                              & DOWD LLP
                                          655 West Broadway, Suite 1900
12                                        San Diego, CA 92101-8498
                                          Telephone: 619/231-1058
13                                        619/231-7423 (fax)

14                                        E-mail:dmyers@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:16-cv-00232-JST Bodri v. GoPro, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrice L. Bishop**
  service@ssbla.com

- **Mario Man-Lung Choi**
  mchoi@kaplanfox.com

- **Catherine Duden Kevane**
  ckevane@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,dsheppard@fenwick.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Robert S. Green**
  gnecf@classcounsel.com

- **Kaitlin O Keller**
  kkeller@fenwick.com,apetrocelli@fenwick.com,fkelley@fenwick.com,dsheppard@fenwick.com

- **Phillip C Kim**
  pkim@rosenlegal.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com

- **Marisa C. Livesay**
  livesay@whafh.com,boyles@whafh.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,recordsecf@fenwick.com,acaloza@fenwick.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Rachele R. Rickert**
  rickert@whafh.com,cabrera@whafh.com,boyles@whafh.com,loritsch@whafh.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`